Ann Marie DUNBAR

v.

William F. TAMMELLEO, in His Capacity as Administrator of the Workers' Compensation Administrative Fund.

Gerald JENKINS

v.

William F. TAMMELLEO, in His Capacity as Administrator of the Workers' Compensation Administrative Fund.

Nos. 94–313–M.P., 94–484–M.P. and 94–485–M.P.

Supreme Court of Rhode Island.

March 20, 1996.

Gary J. Levine, Providence, for Plaintiff Dunbar.

Judith Scott, Cranston, for Defendant.

Hagop S. Jawharjian, Providence, for Plaintiff Jenkins.

## OPINION

WEISBERGER, Chief Justice.

These consolidated cases came before the court on petitions for certiorari filed by William F. Tammelleo in his capacity as administrator of the Workers' Compensation Administrative Fund (administrator) wherein he seeks review of final decrees of the Appellate Division of the Workers' Compensation Court awarding benefits to Ann Marie Dunbar and Gerald Jenkins pursuant to the bonus-incentive statute G.L.1956 § 28–37–4(i), as amended by P.L.1991, ch. 206, § 7, which was subsequently repealed by the General Assembly by P.L.1992, ch. 31, § 16 that became effective upon the date of its passage. P.L.1992, ch. 31, § 29. We grant the petitions for certiorari and affirm the final decrees of the Workers' Compensation Court Appellate Division in part and quash in part. The facts insofar as pertinent to these petitions for certiorari will be set forth separately for each of the cases.

### Dunbar

The Appellate Division set forth the following stipulation of facts in the course of its decision. The stipulation is as follows:

"1. That the petitioner sustained a work-related injury on July 5, 1990 in the course of her employment with State of RI/Juvenile Correctional Service.

"2. That Workers' Compensation Court Decree 90–7674 memorializing said injury, had been entered by the Workers' Compensation Court and is attached hereto.

"3. That the petitioner's pre-injury average weekly wage is $1001.24.

"4. That the petitioner received workers' compensation benefits for total incapacity from July 6, 1990 until April 8, 1991 at which time benefits were reduced from total incapacity to partial incapacity by said decree W.C.C. 90–7674.

"5. That the petitioner returned to work at Sears Roebuck & Co. on August 19, 1991 earning less per week than her pre-injury average weekly wage.

"6. That the petitioner continued to work in such employment for a period of not less than thirteen (13) weeks, and continues to be so employed.

"7. That during this same above-mentioned period of August 19, 1991 through May 1, 1992 the State (self-insured) made partial weekly workers' compensation payments to the petitioner of $386.00/week.

"8. That the Petitioner continues to remain partially disabled.

"9. That the petitioner applied for bonus incentive payments pursuant to R.I.G.L. § 28–37–4(i) on March 2, 1992 making a claim to benefits for weeks worked from August 19, 1991 through May 1, 1992, from August 19, 1991 to December 27, 1991, from December 28, 1991 to April 24, 1992 and from April 25, 1992 to May 1, 1992, the last date of proof of average weekly wage and receipt of compensation before the repeal of the statute.

"10. The petitioner has been paid a total of $19,838.32 for the period of time August 19, 1991 through May 1, 1992.

"11. That Public Law 92–031 repealed R.I.G.L. § 28–37–4(i), effective May 18, 1992.

"12. That on or about November 23, 19[9]2 a Petition to Determine a Controversy was filed at the Workers' Compensation Court.

"13. That the respondent moved to dismiss the petition based on the repeal of R.I.G.L. § 28–37–4(i).

"14. That the petition was denied at pretrial and the petitioner filed a timely appeal."

As set forth in the stipulation, employee applied for and received bonus incentive payments from and after March 2, 1992, and received a total of $19,838.32 for the period from August 19, 1991 through May 1, 1992. After the repeal of § 28–37–4(i), which was effective May 18, 1992, the administrator discontinued payments to employee on the basis of his belief that the statute discontinuing payments should be retroactively applied to individuals already receiving such compensation. A trial judge of the Workers' Compensation Court determined that employee was entitled to continued benefits but stayed his decision pending appeal. The employee appealed from the stay, and the administrator

appealed on the merits. The Appellate Division in its decision held that the statute that purported to repeal § 28–37–4(i) was intended to operate only prospectively and not retroactively. It further held that the trial judge had no authority to grant a stay. We affirm this decision and the final decree that was issued pursuant thereto for the following reasons.

 It has been firmly established that this court will generally construe a statute to "operate prospectively from and after the effective date of the statute. It is only in the event that a statute contains clear and explicit language requiring retroactive application that a statute will be interpreted to operate retrospectively." *Avanzo v. Rhode Island Department of Human Services*, 625 A.2d 208, 211 (R.I.1993). Although the administrator correctly contends that P.L.1992, ch. 31, § 16, repealed the operative section that authorized the bonus-incentive plan, there is nothing in the act that indicates an intent to deprive any employee of a benefit to which he or she had become entitled by reason of a pre-existing agreement, a preliminary determination, or any other prior orders or decrees. It clearly appears that the Legislature specifically intended that P.L.1992, ch. 31 should not have a retrospective application. Section 31 of P.L.1992, ch. 31 reads as follows:

"This act shall take effect upon passage and shall not abrogate or affect substantive rights or pre-existing agreements, preliminary determinations, orders or decrees, provided, however, that all procedural provisions, shall be applicable retroactively, regardless of the date of injury, to all employees, employers, insurers, and other parties or persons, except where otherwise specifically indicated. Except as specifically provided, amendments in this act to the following sections of chapters 28–33 and 28–34 shall apply only to those injuries occurring on or after the date of passage of this act." [1]

---

1. In the published version of the Public Laws, P.L.1992, ch. 31 has only twenty-nine sections. However, the certified copy of the statute maintained in the office of the Secretary of State has

The administrator very properly expresses a strong desire to protect the fund from diminution and points out that the expense of continuing such payments is not only significant but formidable as well. The administrator further points out that our decision in *Brennan v. Kirby*, 529 A.2d 633 (R.I.1987), demonstrates the power of the Legislature to cut off gratuities or floating expectancies until actually received by the beneficiary. *Id.* at 641. However, in order to cut off even gratuities or floating expectancies, the Legislature must manifest an intent to do so.

General Laws 1956 § 43–3–22 provides:

"The repeal of any statute shall in no case affect any act done, or any right accrued, acquired or established, or any suit or proceeding had or commenced in any civil case before the time when the repeal shall take effect."

In the case at bar, employee had by reason of determination made by the administrator become entitled to receive the difference between her regular earnings and the amount that she received from employment while partially disabled pursuant to the bonus-incentive plan. Upon the passage of P.L.1992, ch. 31, the administrator stopped further payments. After a searching examination of the statute both the trial judge and the Appellate Division determined that there was no expressed intent to apply the repeal retroactively.

Consequently this court is constrained to affirm the decision of the Appellate Division and its final decree in determining that employee is entitled to the bonus-incentive payments as long as her partial disability continues.

### THE STAY

 The Appellate Division further determined that the trial judge had no power to stay his own decision. In so determining, the Appellate Division was clearly correct. General Laws 1956 § 28–35–33 provides in pertinent part:

thirty-one sections, culminating in the section quoted above. This enrolled certified copy is the official version of the statute as enacted by the General Assembly.

"Any decree entered by the workers' compensation [court] acting within its powers shall in the absence of fraud be final, and shall take effect immediately upon being entered, and enforcement of the decree shall not be stayed pending appeal."

Consequently the only tribunal that would be capable of ordering a stay of payment of benefits pursuant to a decree of the Workers' Compensation Court would be this court in furtherance of its constitutional power to review all decisions of lower tribunals and to protect the rights of the parties pending such review.

### Jenkins

Gerald Jenkins also brought two actions in the Workers' Compensation Court. One such action sought a determination of the amount of his compensation. The second action challenged the termination by the administrator of the Workers' Compensation Administrative Fund of all compensation following repeal by the General Assembly of the bonus-incentive program pursuant to P.L.1992, ch. 31. In conjunction with his first action the parties filed a stipulation of facts. This stipulation is set forth as follows:

"1. Gerald Jenkins was employed as a sales manager at Jake Kaplan's Ltd. on April 24, 1990, when he became partially incapacitated due to a work-related cause.

"2. Aetna Insurance Company filed a Memorandum of Agreement with the Department of Workers' Compensation on August 16, 1990. (Exh. 1) According to this Memorandum of Agreement, Mr. Jenkins' average weekly wage was $2,462.98 making his compensation rate $386.00.

"3. Mr. Jenkins returned to work on February 17, 1991 at Ashmont Supply Company, earning $300.00 per week.

"4. On June 4, 1991, the Administrator of the Second Injury Indemnity Fund received Mr. Jenkins' request for bonus incentive payments pursuant to R.I.G.L. Section 28–37–4(i) for the weeks between February 17, 1991 and May 25, 1991.

"5. On June 28, 1991, the Administrator of the Second Injury Indemnity Fund received Mr. Jenkins' completed application for bonus incentive payments along with the requisite documentation of earnings and benefits.

"6. On July 25, 1991, the Second Injury Indemnity Fund agreed to pay Mr. Jenkins bonus incentive payments for the weeks mentioned above.

"7. The Second Injury Indemnity Fund offered to pay Mr. Jenkins at the maximum amount allowable under Section 28–37–4(i), as amended, 1991. The incentive payment offered was $604.50 per week for a 14 week period for a total payment of $8,463.00.

"8. Mr. Jenkins declined this offer, claiming an entitlement to $1,776.98 per week. The total bonus award claimed by Mr. Jenkins for the 14 week period at issue is $24,877.72.

"9. The instant petition was filed at the Workers' Compensation Court on 8–16–1991."

A trial judge of the Workers' Compensation Court found as a matter of fact and determined as a matter of law that the award made by the administrator of the fund granting to Jenkins an amount not exceeding 150 percent of the average state weekly wage pursuant to the provisions of § 28–37–4(i) as it existed at the time the award was made was correct. The Appellate Division of the Workers' Compensation Court disagreed and held that Jenkins was entitled to a bonus award of $1,776.98 per week. The Appellate Division reached this conclusion by reasoning that Jenkins's right to the incentive bonus became vested at the time his application was completed and filed, as of June 28, 1991. The amendment to the statute became effective July 1, 1991. The administrator made the award after the new statute had become effective on July 25, 1991. Apparently the Appellate Division assumed that the right to the bonus incentive became fixed on the date of the filing of the application rather than on the date the award was made by the administrator. With this conclusion we respectfully disagree.

The Appellate Division held as a matter of law that the bonus-incentive statute, § 28–37–4(i), created

"a mere gratuity or expectancy which did not exist at common law or under constitutional law. Therefore, this statutory enactment does not create a substantive right to the benefits created but rather creates only an expectation of receiving those benefits. As a result, the Legislature may, at its pleasure, modify or repeal the statutory provision at any time, thus extinguishing the obligation to prospective recipients." Citing *Brennan v. Kirby*, 529 A.2d at 641.

This analysis we believe to be correct, but the application of the analysis to the facts of this case was erroneous. When this significant application was presented to the administrator, he was entitled to a reasonable time to verify the facts set forth in the application and to determine eligibility in terms of the amount claimed. The Jenkins application was not a routine request that should have been ministerially approved on the date of its filing. In considering the matter until July 25, 1991, the administrator was acting within a reasonable time in the light of the complexity of the case presented to him. Three days after the application was filed, the Legislature had seen fit to modify the statute by limiting the maximum amount to 150 percent of the state average weekly wage. This floating expectancy or gratuity remained subject to legislative modification until an award was made by the administrator. The time that he took to make the award was most reasonable in light of the amount involved and the circumstances set forth in the application.

■ It is well-settled doctrine that an appellate court will apply the law that is in effect at the time it considers an appeal. *See, e.g., O'Reilly v. Town of Glocester,* 621

A.2d 697, 704–05 (R.I.1993); *Twomey v. Carlton House of Providence, Inc.,* 113 R.I. 264, 272, 320 A.2d 98, 102 (1974), and *Goodman v. Zoning Board of Review of Cranston,* 105 R.I. 680, 682–83, 254 A.2d 743, 745 (1969). This is particularly true when the legislative intent is retrospective. *Twomey,* 113 R.I. at 272, 320 A.2d at 102.

In the case at bar the Legislature applied the amendment "regardless of the date of the injury," clearly indicating a retrospective application.[2]

■ If an appellate court should apply the law in effect at the time of considering an appeal, a fortiori an administrative agency or a trial court should apply the law in effect at the time it makes its decision if such application would implement the legislative intent. As already noted, the Legislature had the power to modify or to amend this gratuity at any time. Jenkins filed his application on June 28, 1991. The amendment became effective July 1, 1991, and the administrator completed his analysis of the application on July 25, 1991. The administrator was correct in applying the statutory cap as it then existed. *See McComas v. Criminal Injuries Compensation Board,* 88 Md.App. 143, 594 A.2d 583 (1991). In that case the Maryland Appellate Court held that the claimant for criminal injuries compensation did not have a legally enforceable right to compensation from the state until the Criminal Injuries Compensation Board found that the claimant met the eligibility requirements and awarded compensation. *Id.* at 148, 594 A.2d at 585. We find this case persuasive in respect to the issue raised by the case at bar. Consequently the Appellate Division erred when it held that Jenkins was entitled to the sum of

---

2. General Laws 1956 § 28–37–4(i) as amended in 1991 by P.L.1991, ch. 206, § 7 reads as follows:

"Any partially incapacitated employee *regardless of the date of injury,* who returns to employment at weekly earnings of less than his or her pre-injury average weekly wage, and who continues to work in such employment for a period of not less than thirteen (13) weeks, shall be entitled to an additional employee incentive payment from the *special* fund *created pursuant to section 28–37–1.* The incentive bonus shall be paid as a lump sum payment after the employee completes thirteen (13)

weeks of employment, and weekly thereafter. The payment shall be calculated by adding the employee's earnings and his or her appropriate weekly benefit for partial incapacity, determining the difference between that sum and the employee's pre-injury average weekly wage, for each week of the employee's continued weekly employment *but in no case shall the payment made from this fund exceed one hundred fifty percent (150%) of the state average weekly wage as computed and established under the provisions of section 28–44–6(a)."* (Emphasis added).

$1,776.98 per week as opposed to the amount awarded by the trial judge in the sum of $604.50 per week.

When we address the second action filed in the Workers' Compensation Court by Jenkins after the administrator had terminated his benefits following repeal of the bonus-incentive program pursuant to P.L.1992, ch. 31, our decision in respect to the claim of Ann Marie Dunbar is controlling in respect to this case. The Appellate Division found correctly that the Legislature did not intend retrospective application in respect to those claimants in whose favor a decree had already been issued. Regardless of the power of the General Assembly to terminate this gratuity or floating expectancy at any time, it must evidence its intent to do so retrospectively. As set forth above in connection with the Dunbar case, the Legislature manifested no such intent.

For the reasons stated in connection with the Jenkins claims, the final decree of the Appellate Division is quashed insofar as it awarded Jenkins a bonus incentive in excess of 150 percent of the state average weekly wage. The final decree of the Appellate Division requiring the administrator to continue to pay to Jenkins the bonus incentive as long as his partial disability continues is affirmed. The papers in these cases may be remanded to the Workers' Compensation Court with our decision endorsed thereon.