D. CORSO EXCAVATING, INC., et al.

v.

Edna POULIN, as Director of The
Second Injury Indemnity
Fund et al.

No. 98–301–M.P.

Supreme Court of Rhode Island.

March 17, 2000.

Conrad M. Cutcliffe, Michael D. Lynch, Providence, Dorothy M. Linsner, Natick, MA, Jerry E. Benezra, Melrose, MA, for Plaintiff D. Corso Excavation Inc.

Susan Pepin Fay, Providence, for Plaintiff St. Josephs Hospital.

Lauren E. Jones, Robert Smith Thurston, Providence for Defendant Lee H. Arnold.

R. Kelly Sheridan, Providence, for Defendant Centrex Distributors.

John Harnett, Providence, for Defendant Louis Mosco.

Michael A Kelly, Canton, MA, George Salem, Providence, for Defendant Cumberland Farms.

Hugo L. Ricci, Jr., Providence for Defendants Edna Poulin et al.

Rebecca Tedford Partington, Brenda A. Doyle, Providence, for Defendant State of RI.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

When it ended a legislative program allowing employers of previously injured employees to obtain reimbursement of certain workers' compensation payments, did the General Assembly intend for the repeal to have a retroactive effect, and, if so, is such legislation constitutional? In 1998, the General Assembly repealed G.L.1956 § 28–37–4, entitled "Second injury payments." *See* P.L.1998, ch. 105, § 5. This statute allowed qualifying employers and their workers' compensation insurers to obtain reimbursement for certain compensation paid to previously disabled employees who, after their reemployment, became disabled again because of work-related injuries. The source for this reimbursement was an administrative account (Second Injury Fund or fund) within the state's general fund. *See* § 28–37–1.

This petition for certiorari requires us to determine whether the General Assembly intended its 1998 repeal of § 28–37–4 to eliminate reimbursement benefits for those qualifying employers who, before the repeal, paid workers compensation to previously disabled employees and submitted claims for reimbursement thereof, but whose claims were not yet accepted nor adjudged entitled to reimbursement when the repeal became effective. Based upon the plain language of the repealing legislation, we answer this question in the affirmative. We also hold that, when, as here, the beneficiaries of legislated economic benefits do not enjoy a protected property interest, a vested-substantive entitlement, or an enforceable-contractual right to receive such benefits from the state before the effective date of the statute's repeal, the General Assembly not only may repeal the legislation that provided for these benefits, but it may also apply the repeal retrospectively to pending claims for such benefits. And even though the repeal frustrates the reimbursement expectations of those employers and insur-

ers who paid workers' compensation in reliance upon the presumed continued availability of the legislation's reimbursement benefits, its retroactive application does not violate their constitutional rights.

## Facts and Travel

On May 26, 1989, employee Louis Mosca, Sr. (Mosca) sustained a left knee injury in the course of his employment with petitioner D. Corso Excavating, Inc. (Corso). Corso's workers' compensation insurer, petitioner Liberty Mutual Insurance Company (Liberty), filed a memorandum of agreement accepting liability for Mosca's disability as of May 27, 1989. Weekly workers' compensation payments to Mosca began and continued for ten years thereafter.

Mosca had injured his knee previously, in 1962 and 1978, while he was working for different employers. Moreover, he had undergone three surgeries to the knee, and was still receiving medical treatment for this injury until a few months before he joined Corso as an employee in 1988. Corso knew about Mosca's previous knee problems when it hired him. Although Mosca again reinjured his knee in 1989, neither Corso nor Liberty notified the Director of the Department of Labor and Training (director) until August 1993 of a potential § 28–37–4 reimbursement claim against the Second Injury Fund arising from Liberty's disability payments to Mosca. Thereafter, on August 31, 1993, Liberty submitted its reimbursement claim. On December 23, 1994, the director denied the claim, and petitioners filed suit in the Workers' Compensation Court to obtain reimbursement. The trial judge dismissed the claim as untimely in 1996 and, in a two-to-one opinion, a panel of the Appellate Division affirmed this ruling. Corso and Liberty then petitioned this Court for certiorari. While the petition was pending, the General Assembly repealed § 28–37–4. We then issued a writ of certiorari to review the panel's decision and requested the parties to brief the effect of the repeal on petitioners' reimbursement claim.

## Analysis

As indicated above, in 1998 the General Assembly repealed the reimbursement scheme contained in § 28–37–4, under which certain so-called second-injury payments by employers and/or their workers' compensation insurers to disabled employees would be eligible for potential reimbursement.[1] *See* P.L.1998, ch. 105, § 5. Section 28–37–4(b) provided that employers who satisfied the requirements of § 28–37–4 and who paid workers' compensation benefits to employees previously disabled by on-the-job injuries would be able to apply for and obtain reimbursement "from the special fund established

---

1. General Laws 1956 § 28–37–4, as amended by P.L.1993, ch. 474, § 4, provided, in pertinent part, as follows:

 "**Second injury payments.**—(a) It is the purpose of this section to encourage the employment of disabled employees by limiting the liability of employers for compensation and medical charges when an injury to an employee aggravates a preexisting condition to cause a greater disability or loss of earnings than would have resulted from the second injury alone.

 "(b) If an employee, who was previously disabled from any work-related cause or origin, aggravates the preexisting condition, any employer in whose employ the employee sustains this aggravation shall in the first instance pay all compensation payable pursuant to chapters 29–38 of this title, but the employer shall be reimbursed from the special fund established pursuant to § 28–37–1 for all compensation payments subsequent to those payable for the first twenty-six (26) weeks of disability.

 ✻ ✻ ✻

 "(d) In order to qualify under this section for reimbursement from the special fund, the employer either must establish by written records that it had knowledge of the preexisting disability at the time that the employee was hired, or if that employer has applied for and received a workers' compensation rating credit pursuant to subsection (h), and the employer has satisfied all other requirements of this section, the employer shall qualify for reimbursement under this section."

pursuant to § 28–37–1 for all compensation payments subsequent to those payable for the first twenty-six (26) weeks of disability." The General Assembly expressly provided that the repeal of this reimbursement benefit "shall take effect upon passage and shall apply to all claims for reimbursement against the fund in which the director of the department of labor and training has not accepted liability nor has been adjudged liable for reimbursement * * *." P.L.1998, ch. 105, § 7. The only exception to the Legislature's express determination to have this repeal apply to all pending reimbursement claims was that the repeal "shall not abrogate or impair any substantive rights or preexisting agreements, preliminary determinations, orders or decrees between the director and any employer, employee or insurer under which the director has accepted liability or has been adjudged liable under the terms of the repealed section." *Id.*

For the purposes of ruling on this petition for certiorari, we shall assume, without deciding, that petitioners Corso and its workers' compensation insurer, Liberty— as well as other employers and insurers similarly situated—submitted timely claims for reimbursement to the director before the effective date of the repeal and that, but for the repeal, such claims would have qualified for reimbursement under § 28–37–4(b). Nevertheless, we hold that the repeal barred petitioners and others similarly situated from recovering on their claims for reimbursement. Because the director had not accepted liability with respect to petitioners' claims nor had been adjudged liable for reimbursement thereof as of the effective date of the repeal, neither petitioners' claims nor those of other employers and insurers similarly situated survived the enactment of this repealing legislation. Indeed, petitioners concede that, as of the repeal date, their claims were not embodied in any preexisting agreements, preliminary determinations, orders, or decrees between the director and petitioners. And they admit that the director had never accepted liability for

such claims, nor been adjudicated liable therefor. Yet, they contend, by paying compensation to disabled employees like Mosca "subsequent to * * * the first twenty-six (26) weeks of disability," *id.,* and by doing so in reliance on the presumed continued availability of § 28–37–4's reimbursement benefits,. their claims ripened into substantive rights. As a result, petitioners assert, these rights could not be abrogated without providing them with reimbursement, damages, or just compensation for depriving them of this anticipated economic benefit.

Although petitioners (and other similarly situated employers and insurers) presumably expected reimbursement from the fund for all compensation "subsequent to * * * the first twenty-six weeks of disability" that they had paid to disabled employees who had aggravated their preexisting-work-related injuries, their reimbursement claims were mere "floating expectancies or gratuities" that could be eliminated at any time before the director had agreed to pay them such benefits or. was adjudged liable to do so. *See Dunbar v. Tammelleo,* 673 A.2d 1063, 1067 (R.I. 1996) (holding that former § 28–37–4(i) created only a gratuity or expectancy for previously disabled employees to receive bonus-incentive benefits after they returned to work, a benefit that did not exist at common law or under constitutional law; therefore, "[t]his floating expectancy or gratuity remained subject to legislative modification until an award was made by the administrator"). As we pointed out in *Retired Adjunct Professors v. Almond,* 690 A.2d 1342, 1345 (R.I.1997), "[e]ven though * * * plaintiffs may have relied on the potential availability of [a statutory benefit] * * * they were not entitled to conclude that these provisions were fossilized in legislative amber." To construe such a legislative policy as creating enforceable-contract terms, protected-property interests, or other vested-substantive rights would "play[ ] havoc with * * * the fundamental legislative prerogative to re-

serve to itself the implicit power of statutory amendment and modification." *Id.* at 1346 (quoting *Pineman v. Oechslin,* 195 Conn. 405, 488 A.2d 803, 808 (1985)). We are loath to do so, however, because "[e]ven ships of state from time to time need to reshape or remove the policy barnacles encrusted on their hulls. Otherwise, every statute of benefit to some group or individual would remain immutable and forever crystallized in the past as long as one or more beneficiaries could claim reliance thereon." 488 A.2d at 1347.

 In *Retired Adjunct Professors,* we explained why a strong legal presumption exists against construing a statute to create contractual rights enforceable against the state. We held that a statute will be found to create such rights "only when the language and the circumstances of the statute's enactment evince a clear legislative intent to create private and enforceable contract rights against the state." *Id.* at 1345. For example, a statute will be deemed to create contract rights if it " 'provides for the execution of a written contract on behalf of the state' " or if it " 'confirms settlement of disputed rights and defines its terms.' " *Pineman,* 488 A.2d at 806. *Compare Dodge v. Board of Education,* 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57, 62 (1937) (holding that a statutory grant of pension rights to retired teachers did not constitute a contract because it "evinced [no] intent on the part of the legislature to create a binding contract") *with Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 104, 58 S.Ct. 443, 448, 82 L.Ed. 685, 693, *reh'g denied,* 303 U.S. 667, 58 S.Ct. 641, 82 L.Ed. 1123 (1938) (holding that an Illinois statute which repealed teacher tenure was unconstitutional because the repealed law had specifically "required the execution of written contracts between teachers and school corporations"). Moreover, a statutory-benefit scheme like this one "is not the kind of 'bargained-for-exchange' that is the hallmark of contracts." *Retired Adjunct Professors,* 690 A.2d at 1346. The reimburse-

ment statute in the case at bar contains no such contractual or bargained-for-exchange language, and thus petitioners' claims were not tantamount to enforceable contract rights.

In *Dunbar,* 673 A.2d at 1067, we distinguished between what we called a "floating expectancy" and a substantive right to benefits from the same fund at issue here. There, we held that an employee's claim under § 28–37–4(i) to receive bonus-incentive benefits from the fund for returning to work after sustaining a disabling injury was not a substantive right that was immune from any attempted legislative modification or repeal of such benefits. *Dunbar,* 673 A.2d at 1067. Rather, we held that such claims amounted to only a "floating expectancy or gratuity [that] remained subject to legislative modification until an award was made by the [Workers' Compensation fund] administrator." *Id.* Thus, we concluded, the bonus-incentive statute, § 28–37–4(i), created only "a mere gratuity or expectancy [for eligible employees] which did not exist at common law or under constitutional law." *Dunbar,* 673 A.2d at 1067 (quoting *Brennan v. Kirby,* 529 A.2d 633, 641 (R.I.1987)). Therefore, we upheld the Appellate Division's ruling that "this statutory enactment does not create a substantive right to the benefits created but rather creates only an expectation of receiving those benefits. As a result, the Legislature may, at its pleasure, modify or repeal the statutory provision at any time, thus extinguishing the obligation to prospective recipients." *Id.*

██ Although in *Dunbar,* 673 A.2d at 1068, we acknowledged the "power of the General Assembly to terminate this gratuity or floating expectancy at any time," we stated that "it must evidence its intent to do so retrospectively." When it repealed § 28–37–4(i) (providing for employees to receive bonus-incentive benefits) in 1992, the General Assembly failed to include any language in its repealing legislation that manifested its intention to do so retrospectively. Here, in contrast, by expressly

providing that the 1998 repeal of § 28–37–4 "shall apply to all claims for reimbursement against the fund in which the director of the department of labor and training has not accepted liability nor has been adjudged liable for reimbursement," P.L.1998, ch. 105, § 7, the General Assembly manifested its intent that this repeal would apply retroactively to all pending reimbursement claims for which the director had neither accepted liability by agreement nor been adjudged liable for reimbursement.

In so holding, we do not construe the General Assembly's inclusion of the term "substantive rights" in P.L.1998, ch. 105, § 7 to signal its intent to exempt pending claims for reimbursement from the effect of the statutory repeal. Rather, it appears to us that the term "substantive rights" served as a catchall-descriptive term for those legal entitlements that employers, employees, and insurers would acquire under "preexisting agreements, preliminary determinations, orders or decrees between the director and any employer, employee or insurer under which the director has accepted liability or has been adjudged liable under the terms of the repealed section." *Id.* Although the Legislature may not have intended to be exhaustive in specifying these listed circumstances as the only ones where substantive rights could be acquired that would not be abrogated or impaired by the repeal, we are persuaded that its decision to exempt substantive rights did not also extend to pending claims for reimbursement. Otherwise, if mere "claims for reimbursement against the fund in which the director * * * has not accepted liability nor has been adjudged liable for reimbursement," *id.*, could qualify as "substantive rights" that could not be "abrogated or impaired" by the repealing legislation, then the repeal would have no effect on any pending claims, despite that statute's express statement that it would apply to these very claims.

■ Here, the director had denied petitioners' claim for reimbursement because it was not timely. But even assuming arguendo that this determination was incorrect, when the repeal occurred this claim was still one "for reimbursement against the fund in which the director of the department of labor and training has not accepted liability nor has been adjudged liable for reimbursement." P.L. 1998, ch. 105, § 7. Moreover, with respect to these petitioners, there are no "preexisting agreements, preliminary determinations, orders or decrees between the director and [petitioners or others similarly situated] under which the director has accepted liability or has been adjudged liable under the terms of the repealed section." *Id.* Thus, as was true for the claimant Gerald Jenkins in *Dunbar,* the mere submission of a claim for the receipt of statutory benefits, even when it is based upon actions performed and completed before the repeal in reliance upon the presumed continued availability of such benefits, does not immunize such a claim from the abrogating effect of a later repeal of those statutory benefits.

■ As we said in *Lawrence v. Anheuser–Busch, Inc.,* 523 A.2d 864, 869 (R.I. 1987), the "Legislature is free to enact retrospective legislation as long as it does not impair contractual obligations or interfere with vested rights." Absent the inclusion of unambiguous statutory language that would support a contrary conclusion, the General Assembly's mere enactment of a statutory-benefit scheme does not rise to the level of creating protected-property interests, substantive-vested rights, or enforceable-contractual obligations in the prospective recipients of such benefits until and unless the government has accepted liability for such a claim or has been adjudged liable therefor. Hence, such a retroactive repeal cannot be the subject of a successful due-process, just-compensation, or contract-impairment challenge.

Moreover, in *John J. Orr & Sons, Inc. v. Waite,* 479 A.2d 721 (R.I.1984), we ex-

plained why the reimbursement of employers and insurers from the Second Injury Fund for their compensation payments to employees under G.L.1956 § 28–35–20 did not amount to a taking without just compensation in violation of the Fifth Amendment to the United States Constitution, or in violation of article 1, section 16, of the Rhode Island Constitution:

> "[t]he Second Injury Fund does not belong to the carriers. No employer or carrier has a direct or vested interest in the fund. Rather, the carriers and self-insured employers pay annual assessments to the fund. Once paid, these assessments become state or public monies. * * * *Since the Second Injury Fund is a creature of the state, no property right would inure to the employers or carriers. Without a corresponding property right, it could not be maintained that the instant reimbursement provision constitutes a confiscatory taking without due process of law.*" *Id.* at 726 (quoting *McAvoy v. H.B. Sherman Co.,* [401 Mich. 419] 258 N.W.2d 414, 423 (Mich.1977)). (Emphasis added.)

■ Because the money paid by petitioners and others into the fund became the property of the state, petitioners had no property rights with respect to receiving reimbursements from the fund for second-injury payments to disabled employees. For this reason as well, employers and insurers can claim no vested rights based upon their asserted property, contract, or other interest in obtaining reimbursement from the fund's assets. Significantly, petitioners presumably will benefit economically from the Legislature's repeal of the fund's reimbursement provisions because the removal of this relatively substantial expense item may result in lower costs to the fund and, therefore, lower future assessments to petitioners and others similarly situated.

■ Although the petitioning employer asserts that it relied on the reimbursement benefits that were available under the repealed statute when it hired Mosca, the previously injured employee to whom it later paid workers' compensation, petitioners never established this asserted reliance by showing that, but for the existence of § 28–37–4(b), Corso never would have hired Mosca. Indeed, even before the enactment of this provision, another employer had hired this same employee, despite his previous work-related injuries and disability. And the mere fact that petitioners and other employers may have hired workers who had suffered one or more previous work-related injuries and disabilities does not necessarily establish that these employers did so solely in reliance upon the presumed continued existence of the reimbursement benefits formerly conferred by § 28–37–4(b). Further, given the General Assembly's power to withdraw such benefits at any time in the future "until an award was made by the administrator," *Dunbar,* 673 A.2d at 1067, such reliance would not have been justified. Implied-in-fact contract theories (that is, unilateral contract theories) and "notions of promissory estoppel that are routinely applied in private contractual contexts are ill-suited to public-contract-rights analysis." *Retired Adjunct Professors,* 690 A.2d at 1346; see also *Pineman,* 488 A.2d at 809.

■ In sum, because no statutory language evinced any legislative intent to enter into a contract with employers/insurers to provide them with reimbursement benefits, to vest them with substantive rights that would be immune to any attempted legislative abrogation, or to create a protected-property right in their receiving such benefits, their interest in obtaining this reimbursement was a mere "floating expectancy" that could not ripen into a legally protected substantive right—that is, one that would prevent the repeal from depriving petitioners of these benefits—until the director had agreed to accept such claims or was adjudged liable to do so. Moreover, even if § 28–37–4(b) had created substantive rights that the repeal impaired, the repeal still served a "significant and legitimate public purpose" in pre-

serving the fund's assets. Thus, because its adjustment of the affected interests was " '[based] upon reasonable conditions' " and was " 'appropriate to the public purpose,' " *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 412, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569, 581 (1983), no contract impairment claim would be tenable.

 Finally, we hold that the retroactive repeal of § 28–37–4 did not violate petitioners' equal-protection-clause guarantees under either article 1, section 2, of the Rhode Island Constitution or under the Fourteenth Amendment to the United States Constitution. The Legislature's asset-preservation purpose in repealing this statute unquestionably furthered a legitimate state interest, one that it was entitled to conclude outweighed whatever floating expectancy employers and insurers like these petitioners may have entertained to obtain reimbursements for second-injury-compensation payments to disabled employees. *See Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.,* 716 A.2d 730, 734 (R.I.1998) (holding that preservation of limited-fund resources was a legitimate state interest and therefore the statute's reimbursement provisions did not violate state- or federal-equal-protection guarantees). In fine, the retroactive repeal of § 28–37–4 was not "wholly irrelevant to the achievement of the State's objective" to preserve the assets of the fund. Therefore, petitioners' equal-protection challenge is equally unavailing. *Rhode Island Depositors Economic Protection Corp. v. Brown,* 659 A.2d 95, 101 (R.I.1995) (quoting *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961)).

### Conclusion

For these reasons, we deny the petition for certiorari, quash the writ previously issued, affirm (albeit on different grounds) the decree of the Workers' Compensation Court's Appellate Division panel, and re-turn the papers in this case to that court with our decision endorsed thereon.