Gregory SOLAS

v.

EMERGENCY HIRING COUNCIL
OF THE STATE of Rhode
Island et al.

No. 99–68–APPEAL.

Supreme Court of Rhode Island.

June 14, 2001.

Howard Merten, Kimberly A. Simpson, Providence, Michael W. Long, Attleboro, MA, for Plaintiff.

Joseph S. Larisa, Jr., Harris Weiner, Erika Leigh Kruse, Chicago, IL, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

On June 17, 1997, the defendant, the Emergency Hiring Council (EHC or council), held a closed meeting to consider the hiring of a hearing officer for the State Building Commission, a hiring that it ultimately approved. The plaintiff, Gregory Solas (plaintiff or Solas), an advocate on behalf of the handicapped in Rhode Island, wished to be present for the meeting; however, he was informed that he could not attend because the meeting would be closed to the public. Shortly after filing a complaint alleging violations of G.L.1956 chapter 46 of title 42, the Open Meetings Act (act), Solas sought a temporary restraining order (TRO) to prevent the hiring of the hearing officer until the dispute concerning the applicability of the act to meetings conducted by the EHC was resolved.

Before the hearing, the council voluntarily agreed to rescind the posting for the hearing officer position and follow the procedures set forth in the act for future meetings, although continuing to insist that the act was inapplicable to the EHC. On October 1, 1997, based on EHC's agreement to declare the June 17 meeting null and void, a consent order entered that denied plaintiff's motion for a TRO pending resolution of Solas's suit and also provided that the EHC could rescind its open meeting policy upon forty-eight hours notice to plaintiff's counsel.

Approximately one month later, the EHC provided plaintiff with one weeks notice of its next meeting—the meeting at which the hearing officer position again would be discussed. The plaintiff did not attend that meeting. Instead, plaintiff filed an amended complaint seeking a dec-

laration that the EHC was subject to and governed by the act.

The parties filed cross-motions for summary judgment that were heard in Providence County Superior Court. The motion justice, in a written decision, denied the EHC's motion and granted the plaintiff's motion for summary judgment. Contrary to the EHC's assertion that it merely functioned as a fact-finder, the motion justice found that the EHC was a decision-making entity and that its decisions have a direct effect on public policy and that it is thus subject to the requirements of the act. The judgment entered on January 29, 1999, permanently enjoining the EHC from "failing to act in full and complete accordance with the [act]." The EHC filed a timely notice of appeal.

On March 1, 1999, plaintiff filed a motion for the allowance of attorney's fees pursuant to § 42–46–8(d). After a hearing on the matter, the parties filed with this Court a joint motion to remand the case for a determination of the attorney's fees issue. The motion was granted and an order to that effect was entered on April 5, 1999. A written decision was issued by the Superior Court on January 28, 2000, granting plaintiff's request for attorney's fees and returning the case to this Court pursuant to this Court's order of April 5, 1999.

On appeal, the EHC raised four issues. First, the council asserted for the first time before this Court the argument that the executive orders creating the EHC should be read in conjunction with G.L. 1956 § 35–3–1(a)(1),(5), a statute delineating the powers and duties of the state budget officer that, according to the EHC, renders it a fact-finding body created to assist the state budget officer, thereby precluding application of the act. Second, the EHC asserted that, based upon its voluntary recision of the action taken at the closed meeting, plaintiff no longer was an aggrieved person under the act, he lacked standing to pursue a declaratory judgment and that the council's voluntary adoption of the act rendered plaintiff's claim moot and non-justiciable. Lastly, the EHC asserted that retroactive application of § 42–46–8(d) permitting the award of attorney's fees was an error of law on the part of the hearing justice. We affirm the decisions of the trial justice in all respects.

## Discussion

At the outset, we note that this Court consistently has held that it will not entertain post-judgment arguments that were not presented to the trial court. *See State v. Clark,* 754 A.2d 73, 77 (R.I.2000) (citing *State v. Tempest,* 651 A.2d 1198, 1216 (R.I. 1995)); *Rambone v. Town of Foster,* 741 A.2d 283, 285 (R.I.1999) (mem.); *State v. Gatone,* 698 A.2d 230, 242 (R.I.1997); *International Depository, Inc. v. State,* 603 A.2d 1119, 1122 (R.I.1992). The EHC argued for the first time to this Court that it is not subject to the requirement of open meetings because it merely makes recommendations to the state budget officer concerning filling positions of state employment. This argument was not presented to the trial justice, and thus is not properly before this Court. *See Nedder v. Rhode Island Hospital Trust National Bank,* 459 A.2d 960, 962–63 (R.I.1983) (this Court considers only those issues properly presented to the trial court). We therefore refrain from addressing in this opinion the post-judgment arguments raised by the defendants. However, based on our decision today, it is clear that the function of the EHC is not merely to assist the state budget officer.

## Standing

The EHC asserted that plaintiff lacked standing to bring this action because he

was not an "aggrieved person" under the act and had no standing to seek additional declaratory relief. Specifically, the council argued that when the disputed June 17, 1997 meeting was declared null and void and the EHC voluntarily agreed to comply with the act for all future meetings, Solas received his remedy, and thus no longer was an "aggrieved person" under the act. Although we commend the EHC for its voluntary compliance with the requirement for open meetings, we disagree with its argument relative to plaintiff's standing to maintain this suit.

 Section 42–46–8(a) grants standing to "[a]ny citizen * * * of the state who is aggrieved as a result of violations of the provisions of this chapter * * *." Under this broad definition, plaintiff had statutory standing to raise the issue of potential future violations of the act and to pursue the question of the applicability of the act to the EHC. Further, as noted by the trial justice, the act does not require individuals to possess a personal stake or interest in the substance of the meeting to assert a right to attend a meeting of a public body. Rather, plaintiff, a citizen of this state, was barred from a meeting that he had a statutory right to attend. The fact that the EHC declared the June 17, 1997 meeting null and void and agreed to open all future meetings did not deprive Solas of his standing to seek a declaratory judgment, particularly when the EHC explicitly reserved to itself the right to revoke its voluntary compliance with open meeting procedures. According to the terms of the consent order, the council again could bar Solas from a meeting of the EHC upon forty-eight hours notice. We therefore conclude that plaintiff had standing to bring this action pursuant to § 42–46–8(a).

## Mootness

 It is well established that this Court "will review 'questions of extreme public importance, which are capable of repetition but which evade review.' " *Whitehouse v. Davis,* 774 A.2d 816, 818 (R.I.2001) (quoting *Witt v. Moran,* 572 A.2d 261, 264 (R.I.1990)). In addressing the issue of mootness, the EHC, as it did on the issue of standing, argued that any alleged violation of the act had been remedied because of the recision of the June 17, 1997 meeting and its voluntary compliance with act procedures. Although we agree that recision of the June 17 meeting remedied the open meetings violation, we also conclude that the voluntary nature of that recision renders this violation capable of repetition, yet evading review. It is clear that by voluntarily adopting a policy of open meeting compliance, the EHC maintains sole control of whether its meetings will be opened to the public. Absent a determination of whether the EHC is subject to the act, the council can close future meetings until challenged and then merely agree to comply with the act to avoid an adverse judgment. Thus, barring a determination by this Court, nothing would prevent the council from revoking this policy in the future. Accordingly, we conclude that this action is capable of repetition thereby defeating a claim of mootness.

## The Emergency Hiring Council

 Having determined the issues of standing and mootness, we shall proceed to address whether the act is applicable to the EHC and the issue of attorney's fees. The EHC was created by executive order on January 6, 1995, to manage and control the state's hiring practices and its fiscal resources. Pursuant to this directive, no new positions, vacant positions, or promotions could be created or filled without authorization from the EHC. In creating

the EHC, the Governor stated that the intent of the order was to insure that "no person or persons other than the Council shall have the authority to make any determinations in this regard."

A second executive order issued on September 19, 1995, reestablished the EHC's duties and further required the EHC to,

> "use its experience to suggest to the Governor reforms to the State personnel system [in order to] streamline hiring processes, consolidate redundant or unnecessary positions within government and generally improve the quality and delivery of the personnel system."

The EHC was required to meet at least biweekly and was composed of the director of the Department of Administration or a designee, a department director appointed by the Governor (directors are appointed for a three-month period and may be rotated or reappointed), the governor's executive counsel or a designee, the governor's cabinet secretary, and the special assistant to the chief of staff for boards and commissions.

The record demonstrates that the EHC combines senior executive branch staff members with employees for assistance with the functions and objectives set forth in both executive orders to determine whether creating a new position in state government or filling a vacancy is absolutely necessary. Upon a reading of both executive orders, it is clear that the council has been granted significant influence and veto power over creating positions in state government, promoting employees to existing positions and filling existing vacancies. Thus, at the very least, the EHC functions in an influential advisory capacity with veto power over a subject of significant public interest.

## The Open Meetings Act

■ "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996). "Moreover, when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998) (quoting *In re Denisewich,* 643 A.2d 1194, 1197 (R.I. 1994)). After applying these principles to chapter 46 of title 42, Open Meetings, we are of the opinion that the EHC is a public body as defined by § 42–46–2(c), and as such, is subject to the procedures and requirements set forth in the act.

■ The state's open meetings statute was enacted to insure that "public business be performed in an open and public manner, and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." Section 42–46–1. As noted by the trial justice, other jurisdictions have enacted open meeting or "sunshine" laws for the public interest to protect the public from "closed door" politics; and, as such, these enactments should be broadly construed and interpreted in the light most favorable to public access to achieve their remedial and protective purpose. *See Wood v. Marston,* 442 So.2d 934, 938 (Fla.1983); *Canney v. Board of Public Instruction of Alachua County,* 278 So.2d 260, 263 (Fla.1973). To further this legislative and public policy, the act requires that "[e]very meeting of all public bodies * * * be open to the public * * *." Section 42–46–3. Although we agree that the act should be construed broadly and interpreted in a light favorable to public access, we are of the opinion

that broad construction and interpretation are unnecessary in this case because, as written, the act's language clearly encompasses meetings held by the EHC.

For purposes of the act, a "public body" includes "any department, agency, commission, committee, board, *council*, bureau, or authority or any subdivision thereof of state or municipal government." Section 42–46–2(c). (Emphasis added.) Further, a "meeting" is defined as "the convening of a public body to discuss and/or act upon a matter over which the public body has supervision, control, jurisdiction, or *advisory power*." Section 42–46–2(a). (Emphasis added.) A literal reading of the act demonstrates that all meetings to discuss or act upon matters over which the council has supervision, control, or advisory power, are required to be open to the public.

■ The EHC asserted that it is not a decision-making entity with the legal authority to make decisions, and, thus, it is not a "public body" subject to the provisions of the act. Although we disagree with this characterization, it is of no moment to this appeal because application of the act is not limited to "public bodies" that "meet" to render decisions. It is undisputed that the EHC is composed of a group of high level state officials that convenes to discuss and/or act upon matters of great interest to the citizens of this state. In addition, our reading of the executive orders creating the council persuades us

that the EHC possesses significant supervisory and executive veto power over creating or filling state employment positions. At the very least the council functions in an advisory capacity in state hirings. Whether supervisory or advisory, both functions are regulated by the act. As the plain language of the statute provides, a council's exercise of advisory power is enough to bring it under the act's umbrella. Accordingly, we conclude that the EHC is a public body subject to the requirements of the act.

## Attorney's Fees

Section 42–46–8(d) was amended in 1998 to provide for a mandatory award of reasonable attorney's fees unless such an award would be unjust.[1] Because plaintiff filed this action in September 1997, the EHC argued that the trial justice's award of attorney's fees should be reversed because it constituted a retroactive application of the act. In addition, the EHC argues that to uphold an award of attorney's fees in this case we must overturn our decision in *Newport Yacht Management, Inc. v. Clark*, 567 A.2d 364 (R.I. 1989). We disagree on both counts.

It is well settled that courts should apply the law in effect at the time a decision is rendered even though that law was enacted after the events that gave rise to the suit. *Landgraf v. USI Film Products*, 511 U.S. 244, 249, 114 S.Ct. 1483, 1488, 128 L.Ed.2d 229, 242 (1994) (citing *Bradley v.*

---

1. General Laws 1956 § 42–46–8, as amended by P.L.1998, ch. 379, § 1 (effective July 20, 1998) provides in pertinent part:

"**Remedies available to aggrieved persons or entities.—**

\* \* \*

(d) *The court shall award reasonable attorney fees and costs to a prevailing plaintiff, other than the attorney general, except where special circumstances would render such an award unjust.*

The court may issue injunctive relief and declare null and void any actions of a public body found to be in violation of this chapter. In addition, the court may impose a civil fine not exceeding five thousand dollars ($5,000) against a public body or any of its members found to have committed a willful or knowing violation of this chapter."

*School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974)). Accordingly, this Court has held that "a trial court should apply the law in effect at the time it makes its decision if such application would implement the legislative intent." *Dunbar v. Tammelleo,* 673 A.2d 1063, 1067 (R.I.1996). Similarly, this Court has traditionally applied the law in effect at the time we consider an appeal. *Id.*

█ In the case before us, the amendment providing for the award of reasonable attorney's fees was enacted after Solas filed this action; however, it became effective before judgment was entered. Therefore, we are satisfied that the trial justice properly applied § 42–46–8(d) to the facts of this case. Moreover, under our decision in *Dunbar,* even if § 42–46–8(d) had not been effective until after the trial court rendered its decision, provided plaintiff requested an award below, this Court could apply the provision on appeal. *Dunbar,* 673 A.2d at 1067.

Further, *Newport Yacht,* the case relied upon by the EHC is distinguishable from the case now before us. In *Newport Yacht,* this Court was asked to consider the application of G.L.1956 chapter 92 of title 42, the Equal Access to Justice For Small Businesses and Individual's Act (Justice Act) to events that occurred before it was enacted. While recognizing that a remedial statute could be applied retroactively, we held that the Justice Act was a substantive statute creating substantive rights and, therefore, could be applied only prospectively. Here, the Open Meetings Act, enacted in 1976, was an existing substantive right available to the citizens of this state at the time this action was filed. Section 42–46–8(d) merely added an additional remedial measure to that already existing substantive right. In addition, this remedial measure was clearly in effect and applicable at the time the decision was rendered in this case. Thus, we are of the opinion that the award of attorney's fees in this case was appropriate.

## Conclusion

Based upon the foregoing, we hold that the EHC is subject to the requirements of the Open Meetings Act. In addition, we conclude that the attorney's fees provision is an additional remedial measure to a previously existing substantive right and was properly applied in this case. Lastly, although this Court recognizes and acknowledges the importance of executive prerogatives necessary to manage the complexities of state government, and accords great deference to the Governor's economic and policy initiatives, we are not persuaded that this decision will adversely impact upon the authority and privilege of the state's chief executive.

For the reasons stated herein, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.