DIRECT ACTION FOR RIGHTS
AND EQUALITY

v.

Bernard E. GANNON, in his capacity
as Chief of Police of the City of
Providence.

Nos. 99–22–Appeal, 99–221–Appeal.

Supreme Court of Rhode Island.

April 10, 2003.

Dennis T. Grieco, II/Michael G. Sarli, Providence, for Plaintiff.

Richard G. Riendeau/Edward C. Roy, Jr., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, JJ., and SHEA, J.(Ret.).

## OPINION

WILLIAMS, Chief Justice.

In this case, the plaintiff, Direct Action for Rights and Equality (DARE or plaintiff), an incorporated, non-profit community action group based in Providence, Rhode Island, brought an action pursuant to the Access to Public Records Act, G.L. 1956 chapter 2 of title 38 (APRA), to compel the defendant, Bernard E. Gannon,[1] in his official capacity as Chief of Police of the City of Providence (city or defendant), to produce various documents relating to civilian complaints of police misconduct.[2] Both the plaintiff and the defendant appealed the order of the trial justice in this matter, and those appeals were consolidated for a single disposition by this Court. We also note that this is the second appeal heard by this Court concerning the current action. See Direct Action for Rights and Equality v. Gannon, 713 A.2d 218, 225 (R.I.1998) (DARE I) (holding that the city must provide to DARE certain requested documents with only directly identifying factors redacted, such as the names of the complainants and officers against whom the complaints were made). The facts pertinent to the immediate appeal are as follows.

## I

### Facts and Travel

In a letter dated September 17, 1993, plaintiff requested several documents from the city pursuant to the APRA. Specifically, plaintiff requested the following information:

"a.) Every 'Providence Police Civilian Complaint report' (Form 210) filed within the Providence Police Dept. from 1986 to present.

b.) A listing of all findings from investigations that was [sic] conducted by the Bureau of Internal Affairs, in reference to all 'Providence Police Civilian Complaint reports' (Form 210) on record from 1986 to present.

c.) All reports made by the 'Providence Police Department Hearing officers' on their decisions from the findings of investigations conducted in Re: 'Providence Police Civilian Complaints' (Form 210) from 1986 to present.

d.) Reports on all disciplinary action that's [sic] been taken as a result of recommendations made by the Hearing Officers Division since 1986 to present."

On November 28, 1994, Providence City Solicitor Charles Mansolillo (Mansolillo), responded to plaintiff by stating that records only existed from 1988 to present and, further, he refused to produce the

---

1. Bernard Gannon was succeeded as Police Chief by Urbano Prignano, Jr., Richard T. Sullivan (interim) and Dean Esserman.

2. At oral arguments the city also argued that the trial justice erred in not redacting ad-

dresses and names of complainants' family members from the requested records. But because the city did not preserve this issue for appeal at trial, and did not brief the issue on appeal, we do not address these matters.

records sought in categories (a), (b) and (d), but agreed to provide the information in category (c) in redacted form. In response to Mansolillo's denial, plaintiff initiated the present action on May 5, 1995. In its complaint, DARE sought the production of all four categories of documents, $1,000 in damages pursuant to § 38–2–9, plus costs, statutory interest, attorneys' fees and any other relief that the court deemed proper. Both parties filed cross-motions for summary judgment. In June 1996, the trial justice granted plaintiff's motion in part and denied defendant's motion. Specifically, he ordered defendant to produce all the requested records in unredacted form.

The defendant appealed the trial justice's order to this Court. On appeal, we determined that DARE was entitled to get access to the public records in categories (a), (c) and (d), redacting only the names of the complaining citizens and the police officers who were the subjects of the complaints. *See DARE I,* 713 A.2d at 225. DARE was not entitled to the requested records in category (b). *See id.* Furthermore, we remanded the matter back "to the Superior Court for further proceedings consistent with [our] opinion." *Id.*

In a hearing on remand conducted in Superior Court on December 17, 1998, DARE requested that fees for reproducing the documents be waived and that the city be fined and ordered to pay attorneys' fees. The trial justice reserved his decision on those issues for a later date, but ordered defendant to "produce all records that are the subject of this litigation (1986 to and including the present) to the plaintiff on or before January 8, 1999." The defendant then filed a motion requesting that the trial justice reconsider his order and provide the city with more time to

comply because "some 700 closed case files exist" and it would need additional time to retrieve and redact the relevant information. Additionally, defendant appealed the trial justice's order to this Court, stating that:

> "The City's objection was primarily predicated upon the [o]rder requiring the City to provide copies of records that the Supreme Court had opined in the instant matter were unavailable to D.A.R.E. The [o]rder as entered clearly mandates that the City must provide *all* records to the [p]laintiff that are the subject of the litigation. The [o]rder does *not* state that these records be provided in redacted form. All records means *all* records."

This argument was advanced despite a letter from plaintiff's counsel reaffirming DARE's request for defendant to produce only "those things that the Supreme Court has previously said DARE is entitled to."

At an emergency conference requested by the city on its motion for stay, this Court stated that the trial justice's order required defendant to produce only the documents that this Court required in *DARE I.* Consequently, on January 21, 1999, this Court issued an order denying defendant's motion to stay the trial justice's order.

On February 11, 1999, the parties were once again before the trial justice. Besides redacting the names of the complaining witnesses and officers against whom the complaints were made, defendant redacted the names of witnesses, locations, police officers on the scene and in some cases, the race of the parties involved in the incidents. Furthermore, plaintiff expressed concerns that it was not receiving all the records to which it was entitled.[3]

---

**3.** The plaintiff avers that it only received 275 reports of a possible 700 such reports since 1988. Further, defendant only produced reports from 1990 to present.

Consequently, besides requesting attorneys' fees and costs, plaintiff moved that defendant be held in civil contempt.

On May 12, 1999, the trial justice issued a bench decision in which he held that the city had no authority to redact location, even if the complaining witness lived there, nor did defendant have license to redact the names of non-complainant witnesses, whether they were police officers or civilians.[4] The trial justice determined, however, that the city did not intentionally attempt to interfere with the workings of the court, and thus denied plaintiff's motion to hold defendant in civil contempt and refused to order a fine. Additionally, the trial justice relied on the 1998 amendment to the APRA, which allowed him to waive the fees to be charged to plaintiff for the cost of retrieval and redaction of the requested documents because the "information requested is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Section 38–2–4(e), as amended by P.L.1998, ch. 378, § 1. Furthermore, the trial justice ordered that defendant pay to plaintiff all attorneys' fees incurred after July 20, 1998, the date the general assembly amended § 38–2–9(d) (P.L.1998, ch. 378, § 1). In an order dated May 13, 1999, the trial justice ordered defendant (1) to "produce all records that are the subject of this litigation[, redacting] only the names of complainants and the officers against whom complaints have been made * * *," (2) to bear the costs for production, retrieval and redaction of relevant documents, and (3) to pay plaintiff reasonable attorneys' fees and costs incurred by plaintiff from July 20,

1998, through the present. The defendant immediately filed a notice of appeal in this Court, as well as a stay of the trial justice's order, which we denied.

On May 17, 1999, the trial justice heard arguments from the city on why it should be allowed to redact the Social Security numbers of the complainants and the badge numbers of the police officers against whom the complaints were made. Thereafter, he issued an order allowing defendant to redact the Social Security and badge numbers. The plaintiff timely filed notice of a cross-appeal of the trial justice's decisions. This Court granted defendant's motion to consolidate those appeals on March 29, 2000.

On appeal, plaintiff argues that (1) the trial justice erred in failing to hold defendant in civil contempt and should have imposed a $1,000 fine pursuant to § 38–2–9(d); (2) the trial justice should have ordered defendant to pay plaintiff's attorneys' fees from the commencement of this action; and (3) the trial justice erred in permitting defendant to redact the Social Security numbers of complainants and badge numbers of police officers against whom complaints were made. The defendant argues (1) that the trial justice erred by applying the 1998 amendments to the APRA in the instant matter, and (2) that even if they did apply, they did not authorize the trial justice to waive the costs charged to plaintiff for production and redaction and he should not have awarded attorneys' fees because defendant did not commit a knowing and willful violation of the statute. We address these arguments below after providing general background on APRA.

---

**4.** The city admitted that it should not have redacted race, the names of the hearing officers or the names of the attorneys.

## II

## The Purpose of the APRA

"A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both. Knowledge will forever govern ignorance: And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives."[5] The Rhode Island General Assembly has effectively codified this philosophy by enacting the APRA and stating that the purpose of such legislation is as follows:

"The public's right to access to records pertaining to the policy making responsibilities of government and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to governmental records which pertain to the policy making functions of public bodies and/or are relevant to the public health, safety, and welfare. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy." Section 38–2–1.

Consequently, this Court has long adhered to this purpose and recognized that the underlying policy of the APRA is the promotion of the free flow and disclosure of information to the public. *Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1134 (R.I.1992); *Hydron Laboratories, Inc. v. Department of Attorney General,* 492 A.2d 135, 137 (R.I.1985). Accordingly, in construing the APRA this Court is sensitive to the General Assembly's explicitly stated intent provided in § 38–2–1. *See The Rake v. Gorodetsky,* 452 A.2d 1144, 1147 (R.I.1982).

## III

## The Retroactivity of the 1998 Amendments to the APRA

■ In an effort to further promote access to public information, the General Assembly promulgated amendments to the APRA in 1998 that (1) allow a trial justice to "award reasonable attorney fees and costs to the prevailing plaintiff," § 38–2–9(d), and (2) grant a trial justice the power to waive "costs charged for search or retrieval if [he or she] determines that the information requested is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Section 38–2–4(e).

The defendant asserts that the trial justice erred in waiving plaintiff's costs and awarding it attorneys' fees because those amendments to the APRA did not go into effect until after this action began. We disagree with defendant's contention.

In *Solas v. Emergency Hiring Council of Rhode Island,* 774 A.2d 820, 821 (R.I. 2001), the Emergency Hiring Council (EHC) held a closed meeting to consider the hiring of a hearing officer for the State Building Commission. After being informed that the meeting was closed to the public, Gregory Solas (Solas) filed a complaint alleging violations of the Open Meetings Act (OMA), G.L.1956 chapter 46 of title 42, and requesting a temporary restraining order to prevent the hiring of the

---

**5.** Letter from James Madison to William T. Barry (Aug. 4, 1822) (on file with the Library of America).

hearing officer until the applicability of the OMA was resolved. *See id.* The trial justice found that the OMA did apply to the meeting and permanently enjoined EHC from failing to act in accordance with the OMA. *See id.* at 822. Furthermore, the trial justice granted Solas's request for attorneys' fees pursuant to § 42–46–8(d). *See id.*

On appeal, EHC argued that the trial justice erred in awarding attorneys' fees because Solas filed the action in September 1997, and the amendment to the OMA providing for attorneys' fees did not become effective until July 20, 1998. *See Solas,* 774 A.2d at 825. This Court found EHC's argument unpersuasive. *See id.* In making our decision we relied on the axiom that courts "should apply the law in effect at the time a decision is rendered even though that law was enacted after the events that gave rise to the suit * * * [and noted that] 'a trial court should apply the law in effect at the time it makes its decision if such application would implement the legislative intent.'" *Id.* at 825–26. Although the amendment providing for the award of reasonable attorneys' fees was enacted subsequent to Solas's filing of his complaint, it became effective before the trial justice's decision. *See id.* at 826. Thus, the trial justice properly applied the attorneys' fees provision of the OMA to Solas's case. *See id.*

As in *Solas,* the attorneys' fees and waiver of costs provisions in § 38–2–9(d) were enacted subsequent to DARE's filing of its complaint but before the trial justice made a final decision. Thus, we conclude that there is no discernible difference between the two situations and hold that the trial justice did not err in applying §§ 38–2–4 and 38–2–9(d) to the present case.

■ Although the trial justice properly applied § 38–2–9(d) [6] to the current action, plaintiff argues that the trial justice should have awarded attorneys' fees from the time the action began rather than from the date the amendment went into effect. We agree with plaintiff's contention.

■ Ordinarily, this Court presumes that statutes and their amendments operate prospectively unless there is clear, strong language or a necessary implication that the General Assembly intended to give the statute retroactive effect. *See Pion v. Bess Eaton Donuts Flour Co.,* 637 A.2d 367, 371 (R.I.1994). When, however, a statute lacks such clear, strong language or there is no necessary implication concerning its retroactive application, the distinction between a substantive statute and a remedial, or procedural, statute becomes important. *See id.* "Substantive statutes, which create, define, or regulate substantive legal rights, must be applied prospectively. * * * In contrast, remedial and procedural statutes, which do not impair or increase substantive rights but rather prescribe methods for enforcing such rights, may be construed to operate retroactively." *Id.*

Again, we refer to *Solas* for guidance. In *Solas,* we held that the OMA, which was enacted before Solas initiated his lawsuit, was "an existing substantive right available to the citizens of this state at the time [Solas filed this action]." *Solas,* 774 A.2d at 826. The attorneys' fees provision codified in § 42–46–8(d), however, "merely

---

**6.** We do not address the need for retroactive application of G.L.1956 § 38–2–4 because that provision deals with the waiver of costs associated with producing the requested documents. The defendant did not actually begin to produce such documents until after the trial justice's order issued on December 17, 1998. Because production of the documents did not begin until well after the enactment of § 38–2–4, there are no production costs predating the effective date of that provision.

added an additional remedial measure to that already existing substantive right." *Solas*, 774 A.2d at 826. Thus, an award of attorneys' fees from the time the suit began was appropriate. *Id.*

In the case before us, we conclude that, at the time plaintiff brought this action, the APRA conferred upon the public the substantive right to have access to public records. Section 38–2–9(d) merely provides the additional remedial measure of attorneys' fees to that already existing substantive right. Therefore, the trial justice should have ordered defendant to pay attorneys' fees to plaintiff from May 5, 1995—the date plaintiff filed its complaint—to the date of this decision.

## IV

### Awarding Attorneys' Fees under § 38–2–9(d)

■ Alternatively, defendant argues that, even if § 38–2–9(d) applies retrospectively, the trial justice erred in awarding plaintiff attorneys' fees because he should not have made such an award absent a showing of a knowing and willful violation of the APRA. We disagree.

Section 38–2–9(d) provides in pertinent part:

"The court shall impose a civil fine not exceeding one thousand dollars ($1,000) against a public body or official found to have committed a knowing and willful violation of this chapter, and shall award reasonable attorney fees and costs to the prevailing plaintiff."

The crux of defendant's argument is that the scienter requirement of § 38–2–9(d)— that there be a knowing and willful violation of the APRA—is necessary for impos-

ing a civil fine and for awarding attorneys' fees and costs to the prevailing plaintiff. The trial justice disagreed and determined that the "knowing and willful" language only modified the civil fine provision rather than the attorneys' fees provision.[7]

■ This Court reviews *de novo* questions of statutory interpretation. *See Pier House Inn, Inc. v. 421 Corporation, Inc.*, 812 A.2d 799, 804 (R.I.2002). When a statute is clear and unambiguous, we adopt its plain and ordinary meaning. *See id.* When a statute is ambiguous, however, "there is room for statutory construction and we examine the statute in its entirety in order to 'glean the intent and purpose of the Legislature.'" *State v. Ceraso*, 812 A.2d 829, 834 (R.I.2002) (quoting *RIH Medical Foundation, Inc. v. Nolan*, 723 A.2d 1123, 1126 (R.I.1999)). In this case, there is patent ambiguity about whether the "knowing and willful" language modifies an award of attorneys' fees to the "prevailing plaintiff." Therefore, we must look to the APRA as a whole to clarify the requirements of § 38–2–9(d).

■ Section 38–2–2(6) of the APRA, provides that the term "prevailing plaintiff" is equivalent to "those persons and entities deemed prevailing parties pursuant to 42 U.S.C. § 1988." Congress enacted 42 U.S.C. § 1988 in derogation of the "American Rule" that courts should not award attorneys' fees absent explicit statutory authority. *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 602, 121 S.Ct. 1835, 1839, 149 L.Ed.2d 855, 861 (2001). Section 1988 of 42 U.S.C. authorizes courts to award "reasonable attorneys' fees to prevailing par-

---

7. The trial justice found that the use of the comma in § 38–2–9(d) indicated that the General Assembly was expressing two distinct thoughts. Thus, according to the trial justice,

"the second portion of the sentence, following the comma[ ], could stand alone, and if it did so, would clearly not have the requirement of a knowing, willful violation."

ties in proceedings in vindication of civil rights." *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir.2001). "[T]he term 'prevailing party' [is] a legal term of art." *Buckhannon Board & Care Home, Inc.*, 532 U.S. at 603, 121 S.Ct. at 1839, 149 L.Ed.2d at 862. It includes any "party in whose favor a judgment is rendered, regardless of the amount of damages awarded \* \* \* [a]lso termed *successful party.*" *Id.* (quoting Black's Law Dictionary 1145 (7th ed.1999)). The bad faith on the part of a defendant is irrelevant in determining whether to award attorneys' fees to a prevailing plaintiff. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 416–17, 98 S.Ct. 694, 698, 54 L.Ed.2d 648, 653 (1978). Rather, the "prevailing plaintiff" in a civil rights case ordinarily should receive attorneys' fees " 'unless special circumstances would render such an award unjust.' " *Id.* This is consistent with the policy behind 42 U.S.C. § 1988, which encourages "the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Raishevich*, 247 F.3d at 344.

Applying the interpretations of 42 U.S.C. § 1988 to § 38–2–9(d), we conclude that the "knowing and willful" requirement is not a consideration when determining whether a court should award attorneys' fees to a prevailing plaintiff. Rather, that language is only relevant for determining whether a court should authorize a $1,000 fine against a "public body or official." This interpretation gives effect to the legislative intent that a "prevailing plaintiff" be awarded attorneys' fees as he or she would under 42 U.S.C. § 1988—with the inquiry focusing only on whether the plaintiff is successful, not the defendant's subjective intent. Furthermore, we believe that the General Assembly's intent in enacting the APRA would best be served by

providing litigants an incentive to bring meritorious claims when they otherwise may be dissuaded from bringing such claims based on the costly nature of hiring competent counsel. If we held that an award of attorneys' fees to the prevailing plaintiff depended on the subjective intent of the defendant, we would discourage the public from bringing such suits and thereby would ignore the stated purpose behind the APRA.

■ In this case, it is clear that DARE is a prevailing plaintiff. It sought and was entitled to the records from the city. When the city denied its request, DARE brought this suit to compel production of the requested documents. The trial justice and this Court determined that plaintiff was entitled to these records and, accordingly, the trial justice ordered defendant to produce them. Regardless of whether defendant knowingly and willfully violated the APRA, we hold that the trial justice did not err in awarding DARE attorneys' fees under § 38–2–9(d).

## V

### Willful and Knowing Violation of the APRA under § 38–2–9(d)

■ DARE further contends that the trial justice should have ordered defendant to pay the $1,000 civil fine authorized by § 38–2–9(d) because defendant willfully and knowingly violated the APRA. Our standard of review of a trial justice's findings of fact is deferential, and we will overturn such findings only when the trial justice has overlooked or misconceived material evidence or if they are clearly wrong. *Samos v. 43 East Realty Corp.*, 811 A.2d 642, 644 (R.I.2002). In this case, we do not find that the trial justice misconceived or overlooked material evidence or was clearly wrong in determining that defendant did not knowingly or willfully violate

the APRA. DARE presented no evidence to the trial justice showing that defendant intentionally disregarded the APRA. Therefore, DARE is not entitled to the civil fine authorized by § 38–2–9(d).

# VI

## Civil Contempt

▆ In addition to our determination that the trial justice did not err in declining to award to DARE the $1,000 fine authorized by § 38–2–9(d), we affirm the trial justice's decision not to hold defendant in civil contempt for failing to comply with either this Court's or the trial justice's own order for defendant to produce three of the four categories of the requested documents.

▆ "A civil contempt proceeding is an appropriate vehicle to enforce compliance with court orders and decrees when attempting to preserve and enforce the rights of parties litigant." *Trahan v. Trahan*, 455 A.2d 1307, 1311 (R.I.1983). A complaining party can establish civil contempt on behalf of his opponent when there is clear and convincing evidence that a lawful decree has been violated. *Id.* Findings of contempt are within the discretion of the trial justice and this Court will only overturn such findings where they are clearly wrong. *Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 704 (R.I.1994). In this case, there was no clear and convincing evidence that defendant intentionally violated either this Court's decree in *DARE I*, or the trial justice's order. Rather, it is more likely that the orders were misinterpreted to include a wider array of redactable information that would

directly identify the complainant or officer against whom the complaint was made. Therefore, we hold that the trial justice did not abuse his discretion in refusing to find defendant in contempt and we affirm his decision.

# VII

## The Cost of Redaction

▆ The defendant argues that the redaction of the names of the complainants and police officers against whom the complaints were made requires an extraordinary effort and that DARE should bear the cost of such effort. In support of its position, defendant relies on *Providence Journal Co. v. Rodgers*, 711 A.2d 1131, 1139 (R.I.1998), in which we observed that § 38–2–4(a) and (b), require that a party seeking production of public records pay the costs relating to copying, search and retrieval of such documents. Based on those subsections, we determined that the costs of redaction should be borne by the requesting party because it is part of the process of retrieving and producing the requested documents. *See id.* In our decision, however, we noted that the General Assembly, by enacting legislation, could make requested public records available to a requesting party free of cost. *See id.* Shortly thereafter, the 1998 amendments to the APRA went into effect.[8] The portion of the APRA entitled "Cost" was amended to permit a trial justice to waive "costs charged for search or retrieval if it determines that the information requested is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government * * *." Section 38–2–

---

8. As we noted above, there is no need to address the retroactive application of § 38–2–4(e) because production of the requested documents did not begin until after the amendments went into effect. Because we apply the

law in effect at the time of a decision, the trial justice properly applied § 38–2–4(e) to this case. *See Solas v. Emergency Hiring Council of Rhode Island*, 774 A.2d 820, 825 (R.I.2001).

4(e), as amended by P.L.1998, ch. 378, § 1. Thus, interpreting this amendment in context with our decision in *Rodgers,* we conclude that, although the requesting party bears the cost of redaction as part of the search and retrieval costs, a trial judge has discretion to waive those costs when the request is in the public interest and is likely to contribute to the public understanding of operation of government. *See* § 38–2–4(e).

The question of whether the production by defendant of the requested documents was in the public interest presented a mixed question of law and fact. A mixed question of law and fact is one in which "the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66, 80 n.19 (1982). In this case, the rule of law is clear. A trial justice may waive costs if the request is in the public interest and is likely to contribute to the public understanding of government. *See* § 38–2–4(e). The only issue was whether DARE's request satisfied the standard of being in the public interest. Because this Court reviews mixed questions of law and fact with the same amount of deference that we accord to a trial justice's findings of fact, we will not overturn a trial justice's findings of fact absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *See Associated Builders & Contractors of Rhode Island, Inc. v. Department of Administration,* 787 A.2d 1179, 1184 (R.I.2002). The defendant has made no showing that the trial justice's decision that DARE's request was in the public interest resulted from his misconceiving or overlooking evidence or was otherwise clearly wrong. Therefore, we affirm the trial justice's decision to waive the costs of producing the requested records.

## VIII

### Trial Justice's Modification of his Order

The plaintiff avers that the trial justice should not have modified his order of May 13, 1999, to allow defendant to redact the Social Security numbers of the complainants and the badge number of the officers against whom the complaints were made. We disagree.

Litigants have the option of petitioning a trial justice for a modification of an order pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. A trial justice's decision to modify his own order is entitled to deference and " 'will not be disturbed on appeal absent a showing of abuse of discretion or error of law.' " *Zannini v. Downing Corp.,* 701 A.2d 1016, 1017 (R.I.1997) (per curiam).

In this case, defendant did not file a motion to modify pursuant to Rule 60(b). Nevertheless, on May 17, 1999, the trial justice modified his previous order based on defendant's informal request. Although we prefer that litigants abide by the rules of court, we decline to overturn the trial justice's decision to modify based on the absence of a formal motion to vacate. To do so would elevate form over substance. Therefore, we proceed to determine whether the trial justice abused his discretion in modifying his order of May 13, 1999. We determine that he did not.

The APRA does not provide the press and the public with "carte blanche" authority to demand all records held by public agencies. *Providence Journal Co. v. Kane,* 577 A.2d 661, 663 (R.I.1990). Rather, it provides exceptions to the gen-

eral requirement of public disclosure. Section 38–2–2(4)(i)(A)(I) exempts "[a]ll records which are identifiable to an individual applicant for benefits, client, patient, student, or employee, including, but not limited to, personnel, medical treatment, welfare, employment security * * *."

In *Kane,* we held that employee numbers are the kind of record that would specifically identify an employee, thus exempting them from disclosure. *See Kane,* 577 A.2d at 665. In this case, police officer badge numbers are sufficiently similar to the employee numbers in *Kane* to be exempt from disclosure under the APRA. Additionally, a Social Security number is a unique, identifying record that the United States government assigns to every citizen. Because we held that the names of the complainants should be redacted, the trial justice's exemption of their Social Security numbers is likewise worthy of protection because it can specifically identify an individual. Furthermore, this expounds upon this Court's rulings in *DARE I*—that redactable information should include any information that directly could identify a complainant or officer against whom a complaint was made. *See DARE I,* 713 A.2d at 223. Finally, we note that the ruling by the trial justice is entirely consistent with DARE's original request in this action, which called for the production of certain records redacting any information directly identifying the complainant or the officer against whom the complaint was made. Therefore, the trial justice properly allowed the defendant to redact the Social Security numbers and badge numbers from the requested documents.

## Conclusion

The judgment of the Superior Court is affirmed in part and reversed in part. The papers in this case are to be remanded to the Superior Court for a hearing to determine attorneys' fees pursuant to this decision.