DECISION
The late United States Supreme Court Justice Louis Brandeis once said that "sunlight is said to be the best of disinfectants. . . ."[1] The Plaintiffs, Michael Downey, Individually and in his Capacity as President of Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO and Rhode Island Council 94, A.F.S.C.M.E. (Council 94) (collectively, Plaintiffs), argue that they have been thwarted in their efforts to shed "sunlight" on the use of private contractors to perform public services for the State.[2] The Plaintiffs claim that Governor Donald L. Carcieri and the above-named directors and their executive branch agencies (collectively, Defendants) have unjustifiably denied their requests to produce records pertaining to privatization contracts. The Plaintiffs claim that disclosure is required by chapter 2.3 of title 37 of the Rhode Island General Laws, entitled the Governmental Oversight and Fiscal Accountability Review Act (GOFARA, or the Act).
The Plaintiffs petition this Court for a declaratory judgment, a writ of mandamus, and injunctive relief. They also seek attorneys' fees and costs. The Plaintiffs contend that the State either failed to compile certain mandatory records, and/or refused to release copies of those documents. The Defendants maintain that they have fully complied with GOFARA and that Plaintiffs' position is erroneous and based upon an overly broad interpretation of the Act. The Defendants argue that they have no legal obligation under GOFARA to provide Plaintiffs with the requested materials. *Page 3 
For the reasons stated below, the Court finds that Defendants' interpretation of its obligations under the statute is inconsistent with the plain and ordinary language of the Act and inconsistent with the stated purpose of GOFARA. The Court declares that under the subject wording of the statute, information about privatization contracts valued at $100,000, or more, must be disclosed in accordance with GOFARA so long as the contracts provide services that once were performed by public agency employees at some point in the past. The Court finds that the Act does not provide a time limit as to when in the past the services were performed by state employees.
Chapter 30 of title 9 of the Rhode Island General Laws and G.L. 1956 § 8-2-13 confer jurisdiction on this Court.
 I FACTS AND TRAVEL
In 2006, the Rhode Island General Assembly passed GOFARA. In enacting GOFARA, the Legislature found and declared that:
 ". . . using private contractors to provide public services normally provided by public employees does not always promote the public interest. To ensure that citizens of this state receive high quality public services at low costs, with due regard for the taxpayers of this state, and the service recipients, the legislature finds it necessary to ensure that access to public information guaranteed by the access to public records act is not in any way hindered by the fact that public services are provided by private contractors. Section 37-2.3-2.
Although the Governor vetoed the legislation, on June 23, 2006, the Legislature overrode the Governor's veto and passed the statute.
GOFARA established a procedure to fiscally monitor so-called "privatization contracts." The Act requires each state agency to submit an addendum to its budget request listing all *Page 4 
privatization contracts, as well as a summary of private contractor employees for each applicable contract. See § 37-2.3-4(2).
The pertinent facts in this case are generally undisputed. On February 20, 2007, Council 94, through its Executive Director, Dennis Grilli, requested the Governor to produce copies of each state agency addendum that listed privatization contracts in accordance with GOFARA. The Governor's Office informed Council 94 that it did not possess any such documents, and it suggested that Council 94 contact either the Budget Office or the individual state agencies to request the information.
Thereafter, on March 7, 2007, Council 94 contacted the Department of Administration (DOA) and requested the same records. The DOA also responded that it did not possess any such documents. Plaintiffs then filed the instant lawsuit seeking a declaratory judgment, a writ of mandamus, and injunctive relief. Defendants object and seek dismissal of Plaintiffs' claim.
 II STANDARD OF REVIEW
Under the Uniform Declaratory Judgment Act (UDJA), the Superior Court possesses "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-1; see also P.J.C. Realty v. Barry, 811 A.2d 1202, 1207 (R.I. 2002) (quoting § 9-30-1). Thus, "the Superior Court has jurisdiction to construe the rights and responsibilities of any party arising from a statute pursuant to the powers conferred upon [it] by G.L. chapter 30 of title 9, the Uniform Declaratory Judgments Act." Canario v.Culhane, 752 A.2d 476, 478-79 (R.I. 2000). Specifically, § 9-30-2 of the Uniform Declaratory Judgments Act provides as follows:
 "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or *Page 5 
other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or legal relations thereunder." (Emphases added.)
"This statute gives a broad grant of jurisdiction to the Superior Court to determine the rights of any person that may arise under a statute not in its appellate capacity but as a part of its original jurisdiction." Canario, 752 A.2d at 479 (citing Roch v. Harrahy,419 A.2d 827, 830 (R.I. 1980)).[3] Further, this Court acknowledges that the purpose of the UDJA is "to allow the trial justice to `facilitate the termination of controversies.'" Bradford Assocs. v. R.I. Div. ofPurchases, 772 A.2d 485, 489 (R.I. 2001) (citations omitted). Therefore, the plaintiff must present the Court with an actual controversy when seeking declaratory relief. Millett v. Hoisting Eng'rs Licensing Div. ofDep't of Labor, 119 R.I. 285, 291, 377 A.2d 229, 233 (1977). It is well-established that a trial court's "decision to grant or to deny declaratory relief under the [UDJA] is purely discretionary."Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997).
However, in declaratory judgment actions, "the first order of business for the trial justice is to determine whether a party has standing to sue. A standing inquiry focuses on the party who is advancing the claim rather than on the issue the party seeks to have adjudicated."Bowen v. Mollis, 945 A.2d 314, 317 (R.I. 2008). Accordingly, "[t]he requisite standing to prosecute a claim for relief exists when the plaintiff has alleged that `the challenged action has caused him [or her] injury in fact, economic or otherwise[.]'" Id. (quoting RhodeIsland Ophthalmological Society v. Cannon, 113 R.I. 16, 22,317 A.2d 124, 128 (1974)).
Furthermore, "[w]hen called upon to decide the issue of standing, a trial justice must determine whether, if the allegations are proven, the plaintiff has sustained an injury and has *Page 6 
alleged a personal stake in the outcome of the litigation before the party may assert the claims of the public." Id. (citing Burns v.Sundlun, 617 A.2d 114, 116 (R.I. 1992)). Such a "legally cognizable and protectable interest must be concrete and particularized . . . and . . . actual or imminent, not conjectural or hypothetical." Id. (quotingPontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997)) (internal quotations omitted).
 III ANALYSIS
The Plaintiffs ask this Court to declare that every agency which has any privatization contracts is required to compile and attach an addendum to budget requests submitted since passage of GOFARA, and that where appropriate, such addenda also must include information relating to privatization contracts that existed in the year prior to passage of the Act. They further seek the Court to declare that Defendants have not complied with GOFARA either because they did not compile addenda, or if they did compile them, because they failed to produce such public records upon Council 94's request.
The Defendants disagree. They first contend that the lawsuit is premature because Plaintiffs have not exhausted their administrative remedies under chapter 2 of title 38 of the Rhode Island General Laws, entitled the Access to Public Records Act (APRA). Additionally, they suggest that Plaintiffs do not have standing to bring this action due to their failure to allege any harm. The Defendants finally maintain that based upon a reasonable interpretation of GOFARA's statutory definition of privatization contracts, they have fully complied with the Act.
Before addressing the merits of Plaintiffs' claim, the Court first will address the Defendants' exhaustion of administrative remedies and standing arguments. *Page 7 
 A Exhaustion of Administrative Remedies
The Defendants maintain that Plaintiffs are not properly before the Court because they did not pursue their administrative remedies under the APRA.[4] They also contend that the lawsuit is premature because Plaintiffs requested documents only from the Office of the Governor and the DOA, rather than from all thirteen Defendants.
The Plaintiffs counter that the APRA does not mandate exhaustion of administrative remedies before a party may seek declaratory relief. They further assert that even if the APRA mandates such exhaustion, in this case, exhaustion would have been futile because it involves the alleged non-existence of documents based upon the Executive Branch's erroneous interpretation of GOFARA rather than an alleged violation of the APRA itself. The Plaintiffs also aver that they were not required to request the records from the individual agencies because the Governor's Office and the DOA were custodians of said records under the APRA.
It is well-established that a plaintiff who is "aggrieved by a state agency's action first must exhaust administrative remedies before bringing a claim in court." Richardson v. Rhode Island Dept. ofEduc., 947 A.2d 253, 259 R.I. 2008 (quoting Arnold v. Lebel,941 A.2d 813, 818 (R.I. 2007)). The Court further recognizes that there is a "strong preference for proceeding with an administrative procedure through judicial review as opposed to instituting a separate *Page 8 
action. . . ." Id. (quoting Mall at Coventry Joint Venture v.McLeod, 721 A.2d 865, 870 (R.I. 1998)). In spite of this preference, however, the exhaustion requirement need not be fulfilled when the "exhaustion of administrative remedies would be futile." Id. (quotingArnold, 941 A.2d at 818). Exhaustion also is not required when it "would destroy the effectiveness of the relief sought." Id. (quotingAlmeida v. Plasters' and Cement Masons' Local 40 Pension Fund,722 A.2d 257, 259 (R.I. 1998)).
With respect to issues of statutory construction, it is axiomatic that the Court first must "look to the plain and ordinary meaning of the statutory language." Henderson v. Henderson, 818 A.2d 669, 673 (R.I. 2003) (citing Fleet National Bank v. Clark, 714 A.2d 1172, 1177 (R.I. 1998)). "If the language is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Id. Moreover, where a statute is unambiguous, "there is no room for statutory construction and [the Court] must apply the statute as written." State v. DiCicco,707 A.2d 251, 253 (R.I. 1998) (quoting In re Denisewich, 643 A.2d 1194, 1197
(R.I. 1994)).
The Court is mindful that these principles are not absolute, however, and that the plain and ordinary meaning should be accorded a statute unless such an interpretation would defeat the intent of the Legislature. See Gilbane Co. v. William Poulas, 576 A.2d 1195, 1196
(R.I. 1990). Furthermore, it is well-established that the "Court will not construe a statute to reach an absurd result." State v. Flores,714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v. Partington, 681 A.2d 256, 261
(R.I. 1996)). The Court also notes that "[l]egislative enactments will not be interpreted as meaningless or nugatory if any other construction is reasonably possible." See Ward v. City of Pawtucket PoliceDept., 639 A.2d 1379, 1382 (R.I. 1994) (refusing to interpret G.L. 1956 § 42-112-1(c) as requiring the exhaustion of all administrative remedies before the filing of a *Page 9 
civil action, because to do so would render meaningless a provision stating "that an aggrieved party may seek injunctive, among other, relief").
Section 38-2-8 of the APRA provides in pertinent part:
 "(a) Any person or entity denied the right to inspect a record of a public body by the custodian of the record may petition the chief administrative officer of that public body for a review of the determinations made by his or her subordinate. The chief administrative officer shall make a final determination whether or not to allow public inspection within ten (10) business days after the submission of the review petition.
 (b) If the chief administrative officer determines that the record is not subject to public inspection, the person or entity seeking disclosure may file a complaint with the attorney general. The attorney general shall investigate the complaint and if the attorney general shall determine that the allegations of the complaint are meritorious, he or she may institute proceedings for injunctive or declaratory relief on behalf of the complainant in the superior court of the county where the record is maintained. Nothing within this section shall prohibit any individual or entity from retaining private counsel for the purpose of instituting proceedings for injunctive or declaratory relief in the superior court of the county where the record is maintained." Section 38-2-8 (emphases added).
The Court first observes that generally the word "may" is subject to a permissive interpretation. However, in some instances it may be interpreted as mandatory:
 "the ordinary meaning of the word `may' is permissive and not compulsive; yet whether it should be given the latter meaning and construed as `shall' in a given case depends on the intent of the legislature as ascertained from the language, the nature, and the object of the statute." Carlson v. McLyman, 77 R.I. 177, 182, 74 A.2d 853, 855 (1948).
It is clear from the plain and ordinary language of § 38-2-8 that the Legislature intended to give the word "may" its ordinary permissive meaning rather than a compulsory meaning. According to § 38-2-8, when a person or entity is denied the right to inspect a public body's records, then that person or entity may petition the chief administrative officer for a review of *Page 10 
the denial. If the denial is upheld, the person or entity thenmay file a complaint with the Attorney General. Aside from selecting the permissive word "may" over the mandatory word "shall," the Legislature created an alternate remedy to the aforementioned process by clearly and expressly prohibiting the restriction of a person or entity's right to retain "private counsel for the purpose of instituting proceedings for injunctive or declaratory relief in the superior court. . . ." Section 38-2-8.
This conclusion is further bolstered by our Supreme Court, which had had occasion to discuss the provisions contained in § 38-2-8. It held:
 "It is reasonably clear from a reading of these sections that APRA provides a judicial remedy to a person or entity denied access to records alleged to be public records. The first remedy is an administrative appeal under § 38-2-8(a). The second remedy pursuant to § 38-2-8(b) would be to seek the aid of the Attorney General in instituting proceedings for injunctive or declaratory relief. This section also provides for a private action for injunctive or declaratory relief in the Superior Court of the county where the record is maintained." Rhode Island Federation of Teachers, AFT, AFL-CIO v. Sundlun, 595 A.2d 799, 801 (R.I. 1991) (emphasis added).
Consequently, the Court concludes that Plaintiffs were not required to exhaust administrative remedies before seeking relief in the Superior Court. Indeed, a contrary result would render meaningless the language that expressly permits declaratory or injunctive relief. Furthermore, even if the exhaustion of administrative remedies doctrine did apply to requests made pursuant to the APRA, fulfillment of the exhaustion requirement in this case would have been futile.
Section 38-2-3(a) provides:
 "Except as provided in § 38-2-2(4), all records maintained or kept on file by any public body, whether or not those records are required by any law or by any rule or regulation, shall be public records and every person or entity shall have the right to inspect *Page 11 
and/or copy those records at such reasonable time as may be determined by the custodian thereof." (Emphases added.)
According to this provision, with the exception of certain records enumerated under § 38-2-2(4), public bodies are required to make available all records that they maintain or keep on file.
Assuming arguendo that the APRA required Plaintiffs to exhaust administrative remedies before seeking court intervention, Plaintiffs argue that to do so would have been futile. In support of this argument, they note that pursuant to § 37-2.3-4(3), Defendant state agencies are required to submit their budget requests to the budget officer. Furthermore, the Governor is required to submit the statewide budget to the General Assembly pursuant to R.I. Const. IX, G.L. 1956 § 42-11-2, and G.L. 1956 § 35-3-3. Accordingly, both the Governor's Office and/or the DOA, as custodians, necessarily must possess copies of any addendum that may have been prepared by said state agencies. Since both the Governor's Office and the DOA deny possessing any such documents, Plaintiffs assert that any further administrative proceedings would be futile. The Court agrees.
As already noted, § 38-2-8(a) allows a person or entity to petition the chief administrative officer of a public body to review the denial of a right to inspect a public record that previously had been made by that chief administrative officer's subordinate. In this case, the Governor's Office and the DOA denied possessing the requested documents in the first instance. Because the Governor's Office and the DOA denied possession of the documents at issue, and because there is no evidence that they actually exist, it would be futile to require the Plaintiffs to petition a chief administrative officer to determine their obligation to produce the documents. Consequently, even if the exhaustion of remedies doctrine did apply in the instant matter, the matter properly would have been before this Court because the futility exception also would apply. *Page 12 
 B Declaratory Relief
The Defendants next assert that Plaintiffs do not have standing to bring this declaratory judgment action because they failed to allege any injury, economic or otherwise. They then maintain that based upon a reasonable interpretation of the statutory term "privatization contract," the State has complied with its statutory requirements and that any other interpretation would amount to an improper retroactive application of GOFARA.
In response, Plaintiffs contend that they do not need to allege an injury in order to have standing because they have a statutory right to access the public records in question. They also take issue with Defendants interpretation of a "privatization contract," and seek this Court to declare that state agencies are not in compliance with GOFARA.
(i) Standing
Whether Plaintiffs have standing to bring this action under the UDJA is a threshold issue. Pursuant to GOFARA, the Legislature recognized it as necessary "that access to public information guaranteed by the accessto public records act is not in any way hindered by the fact that public services are provided by private contractors." Section 37-2.3-2
(emphasis added). Private contractors, who are defined as "any contractor, consultant, subcontractor, independent contractor or private business owner that contracts with a state agency to perform services which are substantially similar to and in lieu of services heretofore provided, in whole or in part, by employees of an agency[,]" are required to file copies of "each executed subcontract or amendment to the subcontract with the agency, which shall maintain the subcontract or amendment as a public record, as defined in the access to public records act." Sections 37-2.3-3(6) *Page 13 
and 37-2.3-4. Thereafter, each state agency shall include with its respective budget requests an addendum listing all such contracts. Section 37-2.3-4(3). Said "addendums shall be open records."Id.
The APRA provides that "[e]xcept as provided in § 38-2-2(4) . . .every person or entity shall have the right to inspect and/or copy" public records." Section 38-2-2(a) (emphasis added). Section 37-2.3-3(4) defines a person as "an individual, institution, federal, state, or local governmental entity, or any other public or private entity" and, as already noted, § 37-2.3-4(d) declares that the "addendumsshall be open records." In this case, there can be no question that Plaintiff Downey is an individual and Council 94 is a private entity under the APRA and that they each constitute a "person" under § 9-30-13. As such, they have a statutory right to access public records and to seek declaratory relief in the Superior Court under the APRA.See Section 38-2-8(b).
Considering that access to GOFARA addenda is governed by the APRA (see § 38-2-8(b)), and because Plaintiff Downey, as an individual, and Council 94, as a private entity, have standing under the APRA, they have standing to pursue this declaratory action under GOFARA. Furthermore, although Plaintiffs did not allege any injury, economic or otherwise, it is clear to this Court that denial of access to a public record itselfcould constitute harm, because it would deny them the opportunity of ensuring that citizens "receive high quality public services at low costs." Section 37-2.3-2.
(ii) Statutory Interpretation
The parties next disagree on what constitutes a privatization contract, see § 37-2.3-3(5), as well as whether each agency was required to compile and submit an addendum if it possessed any privatization contracts in the year before the enactment of GOFARA. See
Section 37-2.3-4(3). *Page 14 
However, despite the fact that the parties proffer different interpretations of GOFARA, thereby suggesting that the Act contains ambiguities, the Court concludes that GOFARA is not ambiguous and that its plain and ordinary meaning should be given effect.
As already noted, an unambiguous statute is given its plain and ordinary meaning. See DiCicco, 707 A.2d at 253. "By contrast, if a statute is ambiguous, [the Court] must engage in a more elaborate statutory construction process, in which process [the Court] very frequently employ[s] the canons of statutory construction."Chambers v. Ormiston, 935 A.2d 956, 960 R.I. 2007. Thus, "[i]t is only when confronted with an unclear or ambiguous statutory provision that this Court will examine the statute in its entirety to discern the legislative intent and purpose behind the provision." Liberty Mut. Ins.Co. v. Kaya, 947 A.2d 869, 872 (R.I. 2008) (quoting State v.LaRoche, 925 A.2d 885, 887 (R.I. 2007)).
However, "[t]his court has consistently stated that [it] shall not construe a statute in a way that would attribute to the Legislature an intent that would result in absurdities or would defeat the underlying purpose of legislation." Thompson v. Town of East Greenwich,512 A.2d 837, 841-42 (R.I. 1986) (quoting City of Warwick v. Aptt, 497 A.2d 721,724 (R.I. 1985) (internal quotations omitted)). Additionally, the Court "presume[s] that the Legislature intended every word, sentence, or provision to serve some purpose and have some force and effect but[,] [again, it] will not interpret a statute in a manner that would defeat the underlying purpose of the enactment." Pier House Inn, Inc. v. 421Corp., Inc., 812 A.2d 799, 804 (R.I. 2002). Accordingly, "[s]tatutory provisions are ordinarily broadened on the principle of necessary implication only where the absence of some provision would render impossible the accomplishment of the clear purposes of the legislation."Thompson, 512 A.2d at 842. It also is established that "[a]s a general rule, statutes and their amendments are construed to operate *Page 15 
prospectively unless a specific contrary intent is expressed by theLegislature, or retroactivit must necessarily be inferred from thelanguage employed by the law makers." State v. Jennings, 944 A.2d 171,173-74 (R.I. 2008) (emphasis added) (quoting Fox v. Fox, 115 R.I. 593,596, 350 A.2d 602, 603-04 (1976)).
As stated previously, in enacting GOFARA, the Legislature found and declared
 "that using private contractors to provide public services normally provided by public employees does not always promote the public interest. To ensure that citizens of this state receive high quality public services at low costs, with due regard for the taxpayers of this state, and the service recipients, the legislature finds it necessary to ensure that access to public information guaranteed by the access to public records act is not in any way hindered by the fact that public services are provided by private contractors." Section 37-2.3-2.
To accomplish this purpose, the Legislature established a procedure to fiscally monitor privatization contracts. GOFARA defines a privatization contract as
 "an agreement or combination or series of agreements by which a nongovernmental person or entity agrees with an agency to provide services, valued at one hundred thousand dollars ($100,000) or more, which are substantially similar to and in lieu of, services heretofore provided, in whole or in part, by regular employees of an agency." Section 37-2.3-3(5) (emphasis added).
The Defendants maintain that by including the term, "heretofore provided," the Legislature intended the GOPFARA to apply only to new privatization contracts entered into after passage of the Act. The Plaintiffs maintain that a privatization contract essentially is an agreement valued at $100,000 or more, to provide services that once were performed by regular state employees. These differing views derive from the parties interpretation of the term "heretofore provided."
The Oxford English Dictionary defines "heretofore" as "[b]efore this time; before now; in time past; formerly." The Compact Edition of theOxford English Dictionary 240 (Vol. 1 1989). *Page 16 
It also has been defined as "[u]p to now; before this time[.]"Black's Law Dictionary 745 (8th ed. 2004). Other definitions include: "up to this time; formerly; hitherto[;]" Webster's New Twentieth CenturyDictionary 851 (2d ed. 1979), "before this, up to this time, previous"Webster's Third New International Dictionary 1059 (1961), and "up to this time, hitherto, in time past" "previous," and "a preceding time or state." Webster's New International Dictionary 1168 (2d ed. 1935).
Thus, according to the plain and ordinary meaning of § 37-2.3-3(5), a privatization contract is an agreement or combination or series of agreements to provide private services valued at $100,000 or more, which are substantially similar or instead of, services that regular employees of an agency provided in the past, or formerly provided. This definition does not place any time restrictions upon how far back in the past one should look to determine whether the services once were provided by agency employees.[5] Accordingly, the Court declares under GOFARA, a privatization contract includes those agreements that provide the requisite services that were performed by agency employees in whole, or part, at any time in the past.[6] The Court next must determine whether GOFARA applies retroactively to the fiscal year prior to its enactment. *Page 17 
To accomplish its goal of fiscally monitoring privatization contracts, the Legislature provided
 "As part of the budgetary process, each state agency shall provide an addendum to their submitted budget request listing all privatization contracts; the name of each contractor, subcontractor, duration of the contract provided and services provided; the total cost of each contract(s) for the prior year; and the projected number of privatization service contracts for the current and upcoming year, the total cost of each contract(s) for the prior year; the estimated costs of each contract(s) for the current and upcoming year. The addendum for each agency shall also contain a summary of contracted private contractor employees for each contract, reflected as full-time equivalent positions, their hourly wage rate, and the number of private contractor employees and consultants for the current and previous fiscal year. The addendums shall be open records." Section 37-2.3-4(3) (emphases added).
It is clear from the plain meaning of this provision that the Legislature intended GOFARA to apply retroactively to the year prior to its enactment. Section 37-2.3-4(3) requires agencies to submit "the total cost of each contract(s) for the prior year" as well as an addendum relating to private contracts "for the current and previous fiscal year." Even if such language could not be considered explicit, which it is, retroactivity necessarily would have to be inferred because the Legislature intended agencies to include information relating to privatization contracts from "the prior year" and the "previous fiscal year." Section 37-2.3-4(3).
Indeed, were the Court to construe the Act as only operating prospectively, it would render the language in § 37-2.3-4(3) relating to prior contracts as mere surplusage, and would lead to an absurd result by defeating the Act's underlying purpose of promoting the public interest through providing access to public records. To give the statute the narrow interpretation urged by Defendants would defeat its stated purpose and would serve to provide shade rather than "sunlight" to the workings of state government as it relates to using private contractors to *Page 18 
perform public services. Consequently, and according to the plain and ordinary meaning of GOFARA, this Court declares that since June 23, 2006, each state agency has been mandated to compile the requisite data relating to all privatization contracts and to attach that information to its budget request in the form of an addendum. Under the Act, said addenda also must provide information relating to privatization contracts that existed in fiscal year prior to the enactment of GOFARA.
 C Writ of Mandamus
The Plaintiffs also seek a writ of mandamus. They maintain that the Governor and the DOA have a ministerial duty to require all state agencies to prepare addenda, that the defendant agencies have a ministerial duty to prepare and submit said addenda with their budget requests, and that Defendants have no discretion to refuse any request for these public records. The Plaintiffs contend that because Defendants have asserted that no such records exist, they have no adequate remedy at law and request this Court to issue a writ of mandamus.
A writ of mandamus is appropriate to compel performance by public officials of a legal duty delegated upon them by virtue of their office or which the law enjoins as a duty resulting from the office. See Bd. ofCounty Comm'rs v. County Road Users Ass'n, 11 P.3d 432 (Colo. 2000). It is, however,
 "an extreme remedy that will be issued only when: (1) the petitioner has a clear legal right to the relief sought, (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse, and (3) the petitioner has no adequate remedy at law. A ministerial function is one that is to be performed by an official in a prescribed manner based on a particular set of facts without regard to or the exercise of his own judgment upon the propriety of the act being done. Once these prerequisites have been shown, it is within the sound discretion of the Superior Court justice to ultimately issue the writ." New England Development, *Page 19 LLC v. Berg, 913 A.2d 363, 368-69 (R.I. 2007) (internal citations and quotations omitted).
(i) Clear Legal Right
A "legal right" is defined as "[t]he capacity of asserting a legally recognized claim against one with a correlative duty to act."Black's Law Dictionary 1348 (8th ed.). "Within the meaning of the rule of mandamus, a `clear, legal right' is one `clearly founded in, or granted by law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided.'" University Medical Affiliates, P.C. v. Wayne CountyExecutive, 369 N.W.2d 277, 281 (Mich.App. 1985) (internal citations omitted).
In the instant matter, this Court already has concluded that GOFARA granted Plaintiffs a clear legal right, as well as standing, to access the specific public records that they sought from Defendants.See Sections 38-2-2(a) and 37-2.3-4(d). Consequently, they have satisfied the first mandamus prerequisite.
(ii) Ministerial Duty
A ministerial function is akin to an action that is "mechanical" in nature. See Arnold v. R.I. DOL Training Bd. of Review, 822 A.2d 164,167 (R.I. 2003). A discretionary function, however, is "one requiring the exercise of reason in determining how or whether the act should be done." Smith v. Lewis, 669 S.W.2d 558, 563 (Mo.App. 1983).
It is clear from the statutory language of GOFARA that state agencies do not have any discretion as to whether or how they should compile the requisite addenda. The Act explicitly provides that "[a]s part of the budgetary process, each state agency shall provide an addendum to their submitted budget request listing all privatization contracts. . . ." Section 37-2.3-4(3) (emphasis added). It then lists the specific information that each agency must include in its *Page 20 
addendum, see id., and it declares that addenda constitute public records. See Section 37-2.3-4(d). Consequently, this Court concludes that the compilation and submission of addenda are purely ministerial acts.
(iii) No Adequate Remedy at Law
Before mandamus will issue, this Court must find that the Plaintiffs have "no adequate remedy at law." Therefore, to bar mandamus, another available remedy "must be one which is plain, speedy and adequate."Warren Education Ass'n v. Lapan, 103 R.I. 163, 174-75, 235 A.2d 866, 873
(1967) (stating that "[t]he question of what constitutes a plain, adequate and speedy remedy is not susceptible to application as a general rule but instead must be considered in the circumstances of each case"). Furthermore, this Court is mindful that "[a] writ may issue even where other remedies exist, if they are not sufficiently speedy to prevent material injury[,]" because "it is the inadequacy, not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that generally determines the propriety of the issuance of a writ of mandamus." State ex rel. Pierce v. Slusher,244 P. 540, 541 (Or. 1926).
In this case, Defendants took the position that, according to their interpretation of GOFARA, none of the named state agencies were required to compile an addendum. Consequently, it is impossible for Defendants to produce something that they maintain they do not possess. Accordingly, Plaintiffs had no adequate remedy at law because they were unable to access the alleged non-existent public records.
Due to the fact that mandamus is an extraordinary remedy, even when all the elements of mandamus are met, it is ultimately "within the discretion of the Superior Court justice" to decide whether to issue the writ. Berg, 913 A.2d at 368 (citing Martone v. Johnston SchoolCommittee, 824 A.2d 426, 429 (R.I. 2003)). In this case, and in accordance with the UDJA, the Court *Page 21 
already has declared that Defendants have a duty to create, maintain, and provide for public inspection, the requested records in accordance with this Decision. Should Defendants later deny access, they must give specific reasons in writing for the denial. See Section 38-2-7.[7] In light of this declaratory relief, Plaintiffs now have an adequate remedy at law, and the Court declines their request for the issuance of a writ of mandamus.
 D Alternative Relief
The Plaintiffs also seek injunctive relief from the Court, as well as attorneys' fees and costs. As the Court already has issued declaratory relief to Plaintiffs, it need not address the issue of injunctive relief. With respect to attorneys' fees, "[t]he court shall impose a civil fine not exceeding one thousand dollars ($1,000) against a public body or official found to have committed a knowing and willfulviolation of this chapter, and shall award reasonable attorney fees and costs to the prevailing plaintiff." Section 38-2-9(d) (emphasis added).
There is no question that the statute requires that the Court shall only impose a civil fine against a public body or official on a finding that the conduct was willfully wrongful. In this case, Plaintiffs did not provide the Court with evidence upon which the Court could make such a finding of knowing and willful violations. However, the Court finds that the statute does not require a similar finding of a knowing and willful violation in order to award counsel fees and costs. See DirectAction for Rights and Equality v. Gannon, 819 A.2d 651, 660 (R.I. 2003) (holding "that the "knowing and willful" requirement is not a consideration when determining *Page 22 
whether a court should award attorneys' fees to a prevailing plaintiff"). Indeed, if "an award of attorneys' fees to the prevailing plaintiff depended on the subjective intent of the defendant, [it] would discourage the public from bringing such suits and thereby would ignore the stated purpose behind the APRA." Id. Accordingly, GOFARA mandates that a prevailing plaintiff be awarded fees and costs. Subject to a hearing on the reasonableness of the fees and costs sought, Plaintiffs shall be awarded attorneys fees and costs.
 IV CONCLUSION
The Court hereby declares that Defendants must abide by the requirements of GOFARA in accordance with this Decision. Consequently, Defendants have a duty to compile the requisite addenda and attach them to their budget requests submitted since June 23, 2006. Said addenda also must include the requisite information concerning privatization contracts that existed in the previous fiscal year, including the fiscal year prior to the enactment of GOFARA. For purposes of GOFARA, a privatization contract is an agreement or combination or series of agreements to provide private services valued at $100,000 or more, which are substantially similar or instead of, services that regular employees of an agency ever provided in the past. The Governor's Office and/or the DOA, as custodians of the records, are ordered to release each addendum pursuant to the APRA. The Court awards attorneys fees and costs to Plaintiffs, subject to a hearing as to reasonableness of such fees and costs.
Counsel shall submit appropriate judgment for entry.
[1] This quote is contained in a book of short essays written by then-attorney Louis D. Brandeis. The particular essay is entitled "What publicity can do." See LOUIS D. BRANDEIS, OTHER PEOPLE'S MONEY AND HOW THE BANKERS USE IT 92 (Frederick A. Stokes Co. ed. The McClure Publications 1932) (1913).
[2] See n. 1 supra.
[3] Section 9-30-13 defines a "person" as "any person, partnership, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever."
[4] The Defendants suggest that this lawsuit is politically motivated and that Plaintiffs deliberately bypassed the administrative process by prematurely filing suit "in an attempt to divert attention away from financial issues the State is currently facing." Defendants' Memorandum at 4 n. 1. Nonetheless, Plaintiffs' motivation, if any, to obtain the documents at issue is irrelevant. See Section 38-2-3(h) ("No public records shall be withheld based on the purpose for which the records are sought."); see also Data Tree, LLC v. Romaine, 880 N.E.2d 10, 15 (N.Y. 2007) ("However, FOIL [Freedom of Information Law] does not require the party requesting the information to show any particular need or purpose.").
[5] The Court observes that this provision since has been amended, effective January 1, 2009, to place time restrictions on the definition of a privatization contract. Such an amendment may evidence recognition on the part of the Legislature that the definition, as currently written, is open-ended. See 1A Norman J. Singer, Sutherland StatutoryConstruction § 22:30 at 357 (6th ed. 2002) ("When the statute is amended and words are omitted, the general rule of construction is to presume that the legislature intended the statute to have a different meaning than it had before the amendment.") However, the amendment is not relevant for purposes of this Decision.
[6] The Defendants ignore all of the broader definitions of "heretofore" in order to imply that its sole meaning is "up to the present time." They then use this narrow definition to support their argument that the GOFARA only relates to privatization contracts entered into after passage of the Act. However, in this case, application of such a narrow definition to the exclusion of the many broader definitions of the word would render GOFARA meaningless because it would be impossible for the statute to achieve its clear purpose of ensuring the public receives high quality/low cost public services. See Thompsonv. Town of East Greenwich, 512 A.2d 837, 842 (R.I. 1986). Consequently, the Court rejects Defendants' extremely narrow interpretation of the word "heretofore."
[7] Section 38-2-7(a) provides:
 "Any denial of the right to inspect or copy records provided for under this chapter shall be made to the person or entity requesting the right by the public body official who has custody or control of the public record in writing giving the specific reasons for the denial within ten (10) business days of the request and indicating the procedures for appealing the denial. Except for good cause shown, any reason not specifically set forth in the denial shall be deemed waived by the public body."